# Town of Greensboro *v.* Ehrenreich.

*Prosecution for Violation of Town Ordinance.*

1. *Validity of municipal ordinance prohibiting importation or sale of second-hand clothing, bedding, &c.*—Power conferred on a municipal corporation, by its charter, "to pass and enforce all ordinances deemed necessary or proper to prevent the introduction of infectious or contagious diseases, and to preserve the health of the inhabitants," does not confer authority to enact an ordinance making it unlawful for any per-

[Town of Greensboro v. Ehrenreich.]

son "to import, sell, or otherwise deal in second-hand or cast-off garments, blankets, bedding or bed-cloths," with a proviso excepting the sale of such articles when not imported, or which have not been used by persons having infectious diseases.

APPEAL from Hale Circuit Court.

Tried before the Hon. S. H. SPROTT.

The appellee was arrested and convicted by the mayor, for a violation of an ordinance of the town of Greensboro, entitled "an ordinance to regulate the sale of imported second-hand or cast-off clothing and other goods," which provides that "it shall be unlawful for any person to import, sell or otherwise deal in second-hand or cast-off garments, blankets, bedding or bed-clothing in said town of Greensboro; provided that this ordinance shall not apply to the sale of said articles not imported, and that have not been used by persons having infectious diseases," with a penalty of not less than ten dollars for its violation. From the mayor's judgment an appeal was taken to the Circuit Court where a demurrer was interposed to the proceedings or statement filed, setting up the unconstitutionality of said ordinance, and that it was unreasonable and against common right. The demurrer was sustained and the accused discharged. The town of Greensboro takes this appeal from the judgment of the Circuit Court.

COLEMAN & COLEMAN, for appellant.—1. The power to direct and regulate the mode of selling by citizens, and within its own territory, is one of the acknowledged powers of State government, and has never been doubted.—*Commonwealth v. Kimball*, 35 Amer. Dec. 326; *City of New York v. Miles*, 11 Peters 133; *Gibbons v. Ogden*, 9 Wheaton 194. 2. Quarantine and health laws are considered as emanating from an acknowledged power of the State to preserve and provide for the health of its citizens.—Cooley's Con. Lim. (4th Ed.) 729–732; *Commonwealth v. Kimball*, 35 Ame. Dec. 326; *Gibbons v. Ogden*, 9 Wheaton 194. 3. An ordinance passed by a municipality for the protection and preservation of the public health, though prohibitory, is in the nature of a general regulation, and is not to be construed with technical strictness, and every reasonable presumption is to be made in its favor.—*Taunton v. Taylor*, 116 Mass. 260; *Commonwealth v. Patch*, 97 Mass. 221; *Woodruff v. Stewart*, 63 Ala. 215; Sedgwick on Con. of Stat. and Con. Law. 194. 4. This ordinance is of the nature, and is in fact a police regulation, passed in exercise of the police power delegated to the town of Greensboro by the legislature.—*Inhabitants of Watertown v. Mayo*, 12 Amer. Rep. 696; Slaughter House Cases, 16 Wallace, 36–63. In the exercise of this police power a municipality may interfere not

[Town of Greensboro v. Ehrenreich.]

only to regulate the sale of a commodity, but may even pro-
hibit its sale, or condemn and destroy it.—35 Am. Dec. *supra;*
107 Mass. 396; 5 Otto. 471–2; 34 N. Y. 657; 92 Ill. 569;
69 Ill. 595.

THOS. R. ROULHAC, *contra.*—Cited: Acts 1878–9, p. 388;
*Fisher v. Blight,* 2 Craven 358, 399; *Purdy v. People,*
4 Hill 397; *McClusky v. Cromwell,* 11 N. Y. 601–4; *Wal-
ter v. Harris,* 20 Wend. 561–2; *King v. Carrtwright,* 4 T.
R. 490; *U. S. v. Palmer,* 3 Wheat. 610; Potter's Dwarris
194; Sedgwick on Stat. & Con. Law. p. 50; 9 Cranch 104;
5 Cranch 368; Dillon on Mun. Cor. §§ 954–5; 16 How. 369–
380; *Sloan v. The State,* 8 Blackford (Ind.) 361; *People v.
Morris,* 13 Wend. 325; 12 Wall. 418; 100 U. S. 434; Cooley
Con. Lim. § 16; 7 How. 283; 71 Ala. 504; 102 U. S. 123;
8 Wall. 123; 73 Ala. 480; 70 Ala. 361; 92 U. S. 268.

CLOPTON, J.—The charter of the town of Greensboro
confers authority: " To pass and enforce all ordinances deemed
necessary or proper to prevent the introduction of infectious
diseases, and to preserve the health of the inhabitants of the
same." Under this power, the corporate authorities passed an
ordinance declaring: "That it shall be unlawful for any per-
son to import, sell, or otherwise deal in cast-off garments,
blankets, bedding, or bed-clothes in said town of Greensboro;
Provided, that this ordinance shall not apply to the sale of
said articles not imported, and that have not been used by persons
having infectious diseases;" and prescribing a penalty for its
violation. The validity of the ordinance is the question for
determination.

The legislature has undoubted power to authorize, and the
authority conferred is ample, to pass ordinances on the enu-
merated subjects—the prevention of the introduction of infec-
tious or contagious diseases, and the preservation of the public
health. Ordinances, having for their object the protection of
the health of the inhabitants, which is one of the principal
purposes and most important duties of municipal governments,
are generally regarded as police regulations, subject to which
the individual holds his rights of liberty and of property.
Presumptions will be indulged in favor of their necessity,
propriety, and validity, and when not unreasonable, nor partial,
nor oppressive, nor inconsistent with the legislative policy of
the State, should and will be sustained. Considered a part of
a system of police regulations in aid of the preservation of the
public health, the courts will not interfere with, or set them
aside, unless the power has been manifestly transcended. By
the grant of power, the character and special provisions of the

[Town of Greensboro v. Ehrenreich.]

ordinances are largely left to the discretion and judgment of the corporate authorities—" *deemed* necessary or proper,"—not, however, an absolute power to pass any ordinances, which they may perchance judge necessary or proper; not to be exercised capriciously, but with regard to the circumstances, the object to be accomplished, and the existing necessity. Notwithstanding the grant of power is general—" to pass and enforce ordinances deemed necessary and proper"—ordinances passed under the power must not be unreasonable, partial, or unfair; must not be in restraint of trade; nor contravene the general laws and public policy. It will not be presumed, that the legislature intended to clothe the municipal government with power to dispense with the requisites to a valid ordinance. The power will not be enlarged by intendment. And though the necessity and propriety of a particular ordinance is primarily of legislative determination, its character, whether reasonable, impartial, and consistent with the State policy, are questions for the court.—1 Dil. on Mun. Cor., §§ 319, 325, 329; *Int. & Coun. of Marion v. Chandler*, 6 Ala. 899; *Ex parte Frank*, 52 Cal. 606.

The general statutes provide quarantine as the means to prevent the introduction of infectious or contagious diseases. To this end, any town or city may establish a quarantine ground; the corporate authorities may, from time to time, prescribe the quarantine to be observed by all vessels arriving within the harbor or vicinity; may extend such regulations to all persons, goods, and effects in such vessels; and may compel any person coming into town, by land, from a place infected with a contagious disease, to perform quarantine, and be restrained from travelling until discharged.—Code of 1876, §§ 1507–1512. The policy of the statutory provisions is the regulation of trade and travel by temporary restraint, not extending beyond the occasion and scope of the necessity—self-defensive, which is the limitation on the police power of the State imposed by the Federal Constitution.—*Railroad Co. v. Husen*, 95 U. S. 465. The State can not confer upon the subordinate agencies of the government powers which it does not possess, and can not exercise. The general grant in the act of incorporation, it will be presumed, had reference to these and kindred regulations. We do not mean, that the corporate authorities may not adopt and provide other and additional regulations; but that they should be in accordance with the spirit and policy of the general statutes.

The professed object of the ordinance, as shown by the preamble reciting the recommendation of the officers and members of the board of health, is to protect the health of the community. While unquestionably the municipal govern-

[Town of Greensboro v. Ehrenreich.]

ment may pass sanitary ordinances for the preservation of health within its limits; may prevent articles of merchandise or other things which have been used by persons or in places infected with contagious disease, from being brought into the town; may establish quarantine and reasonable inspection regulations; and provide for disinfecting or destroying the germs of disease as far as practicable; and it may be, for obtaining satisfactory assurance that such articles have not been exposed to an infectious or contagious disease; the power can not be carried beyond what is necessary for protection. It will not be controverted, that second-hand or cast-off garments, blankets, bedding, and bed-clothes are not, *per se*, introductive of infectious or contagious diseases; and that a lawful business selling or dealing in them, may be carried on without danger to the public health. They become dangerous by reason of the nature of previous use, condition, or exposure. This is virtually admitted by the *proviso* to the ordinance, which excepts from its operation the sale of the specified articles not imported, and that have not been used by a person having an infectious disease. The operation of the ordinance reaches beyond the scope of necessary protection and prevention into the domain of restraint of lawful trade, by permanently prohibiting the importation, selling, or otherwise dealing in the enumerated articles, though they may not have been used by persons or in districts, infected with such diseases. Municipal authorities, having power to abate nuisances, can not absolutely prohibit a lawful business not necessarily a nuisance, but may abate it when so carried on as to constitute a nuisance. They can not, under the claim of exercising the police power, substantially prohibit a lawful trade, unless it is so conducted as to be injurious or dangerous to the public health. If they can declare it unlawful to import, sell or otherwise deal in second-hand or cast-off garments, blankets, bedding, and bed-clothes, without regard to the circumstances or necessity, they may, under the same power, declare it unlawful to import or sell meat because at some times and in some places, it is infected with trichina, or other kind of food, because liable to adulteration. That the ordinance is founded on the fear and apprehension of possible danger, and not on its existence, is shown by the unequal discrimination between articles imported and not imported. We can not regard it a legitimate exercise of the power conferred by the act of incorporation.— *Weil v. Record*, 24 N. J. Eq. 169; *Barling v. West*, 29 Wis, 307; *Dnnham v. Rochester*, 5 Cow. 462; *Mayor, &c., of Mobile v. Yuille*, 3 Ala. 137.

Affirmed.