In the Matter of the Application of WILLIAM H. SMITH et al. for a Writ of Habeas Corpus, etc.

Where a right to restrain the citizen in his personal liberty, or to interfere with his pursuit of a lawful avocation is claimed, to sustain the claim it must appear very clearly not only that the right has been conferred by law, but that the facts exist justifying its exercise.

Under the provision of the charter of the city of Brooklyn (§ 5, tit. 12, chap. 583, Laws of 1888) making it the duty of the health commissioner of that city to take such measures for the preservation of the public health from impending pestilence, and under the provision of the "Public Health Law" (§ 14, chap. 661, Laws of 1893) requiring every local board of health to "guard against the introduction of contagious and infectious diseases," and to "require the isolation of all persons * * * infected with and exposed to such disease," to justify such isolation

the fact must exist that the persons are infected with the contagious disease or have been exposed to it.

No authority is given by said provisions to said health commissioner to quarantine any person simply because he refuses to be vaccinated, and to continue him in quarantine until he consents to such vaccination.

On application for a writ of habeas corpus, the relators' petition alleged that they were imprisoned and restrained of their liberty at their house in said city by the order and direction of the commissioner of health; that they had been exposed to no contagion, and were not afflicted with any contagious disease. In the return made by the commissioner to the writ, he alleged that for several months smallpox had been epidemic in the city; that as he was informed and believes, before ordering the relators to be detained in quarantine, they were engaged in the prosecution of the express delivery business in said city, and in its worst infected district: that the business includes the carrying of household furniture and other articles which may come from infected centres and be infected with the germs of smallpox; that the relators "were unusually exposed to such contagion," and it was "of special importance that they should be vaccinated at once," and that they were detained in quarantine because of their refusal to be vaccinated. *Held*, that a demurrer to the return was properly sustained; that said commissioner had no jurisdiction to make the order.

(Argued April 22, 1895; decided May 3, 1895.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 14, 1895, which reversed an order of Special Term made in habeas corpus proceedings discharging the appellants from the custody of Z. Taylor Emery, health commissioner of the city of Brooklyn.

The relators alleged in their petition that they were imprisoned, or restrained of their liberty, at their house in the city of Brooklyn, not by virtue of any judgment or process issuing from any court, but upon the order and direction of the respondent, the commissioner of health of the city of Brooklyn. They alleged as the cause for their imprisonment, which was effected by a detail of policemen to watch the premises, that they had refused to permit themselves to be vaccinated They also alleged that they had been exposed to no contagion and were not afflicted with any disease, contagious or otherwise. In the return made by the commissioner

of health to the writ of habeas corpus issuing upon the
the relators' petition, it is stated that the relators were
placed under quarantine · by his orders and by virtue of the
authority vested by law in him to take such precautions
as are necessary for the protection of the public health against
smallpox; that the relators were detained in quarantine by
reason of their refusal to permit themselves to be vaccinated;
that for several months previously smallpox had been present
to an alarming extent in the city of Brooklyn and had been epi-
demic in that city, and that the utmost precaution and most thor-
ough preventive measures were necessary in order to prevent
the spread of the disease beyond control. It is then alleged in
the return, as a well-established scientific fact, that vaccina-
tion is a preventive of that disease. The health commissioner
then proceeds to state as follows : " That, as I was informed
and believed, before ordering the quarantine to be placed
upon the said premises and that said persons be detained
therein, the said William H. Smith (one of the relators) is the
proprietor of an express delivery business, and that the said
Cummings (the other relator) is employed by him in said busi-
ness, and that they are both actively engaged in the prosecu-
tion thereof in the cities of New York and Brooklyn and
especially in Greenpoint and the eastern district of said city of
Brooklyn, which latter has been one of the worst infected cen-
tres of said city. That said business is of a general nature, and
may include the carrying of trunks, bedding, furniture and
numerous other articles which may come from infected centres
and be infected with the germs of smallpox ; and it became at
once apparent to me that the said Smith and Cummings were
unusually exposed to such contagion, and that they might be
seized therewith and by communication with others spread the
same ; and that it was, therefore, of special importance that they
should be vaccinated at once." The return then goes on to state
that a quarantine was ordered to be placed upon the premises
and the persons contained therein, until they consented to be
vaccinated, and that such measures were taken in order to pro-
tect the citizens of Brooklyn, in the belief that if the said Smith

and Cummings were permitted to continue in their said business without being so vaccinated they might be the means of most serious fatal consequences to other citizens. The return alleges that there had been at least twenty-eight cases of smallpox in and about the 17th ward of the city and that a proclamation of great and imminent peril had been made by the mayor and the president of the medical society of the county of Kings. The proclamation, to which reference is made in the return, is annexed and refers to the measures and acts declared to be necessary by the commissioner of health and approves of them, and declares that the peril from an impending epidemic of smallpox shall be deemed to exist, etc. The acts and measures, which that declaration approves, are stated over the signature of the commissioner of health, who declares them necessary to be taken for the preservation of the public health from the impending pestilence of smallpox. They are stated to be; "First: Thorough and sufficient vaccination of every citizen, who has not been successfully vaccinated within such period of time as, in the judgment of the commissioner of health, renders such person immune, should be procured. Second: Wherever any person in said city shall refuse to be vaccinated, such person shall be immediately quarantined and detained in quarantine until he consents to such vaccination." The relators demurred to the return and, after a hearing, were discharged from the commissioner's custody. They appealed to this court from an order of the General Term which reversed the order, etc., discharging them.

*Charles J. Patterson* for appellants. The demurrer to the return only admits the facts that are stated in that document and not all the recitals contained in the papers annexed to it. (*Russell* v. *Mayor, etc.*, 2 Den. 474.) Under the statutes applicable to this case the questions whether the overruling necessity exists, and whether the remedy is appropriate, are judicial ones to be passed upon by the courts whenever a citizen challenges the right of the commissioner to interfere with his person or property. (*People ex rel.* v. *Board of*

*Health*, 140 N. Y. 1; *Young* v. *Flower*, 22 N. Y. Supp. 332.) The other statutory provisions referred to by the respondent are plainly insufficient to justify his action in restraining the appellants. (Laws of 1893, chap. 661; Laws of 1888, chap. 583.) The policy of the law of this state has not been to make vaccination compulsory upon the people. (Laws of 1893, chap. 661, § 118.)

*Alexander H. Van Cott* for respondent. The provisions of the charter of Brooklyn make the commissioner of health, the mayor and the president of the Medical Society of Kings County, the judges of the existence of great and imminent peril to the public health of the city by reason of impending pestilence. (Laws of 1888, chap. 583, § 5; *Harrison* v. *Baltimore*, 1 Gill, 264; *Brown* v. *Purdy*, 22 J. & S. 109.) They having thus declared the existence of this great and imminent peril, the statute made it the duty of the commissioner of health to take, do and cause to be done, such measures and acts as he in good faith declared the public safety and health to demand, and the mayor and president of the medical society approved in writing. (Laws of 1888, chap. 583, § 5.) The statutes make the commissioner of health, whom they charge with the duty of carrying out and doing these measures and acts, the sole judge of what means and subordinate officers shall be employed in the performance of these duties. (*Wood* v. *Moorehouse*, 45 N. Y. 368, 376; *People ex rel.* v. *Board of Health*, 140 id. 1.) Concurrently with the charter provisions, the general law relating to local boards of health requires the commissioner to provide vaccination for all who need it in the event of an actual epidemic of smallpox; and at all times to require the isolation of persons exposed to contagious or infectious diseases. (Laws of 1893, chap. 661, § 24.) The legislature had the power to confer the authority and impose the duties conferred and imposed by these acts. (*Kerrigan* v. *Force*, 68 N. Y. 381; *People* v. *Durstan*, 119 id. 569; 37 id. 661, 670; *Health Dept.* v. *Knoll*, 70 id. 530, 536; *R. R. Co.* v. *Husen*,

95 U. S. 465, 471 ; *Lawton* v. *Steele*, 119 N. Y. 226 ; *Morgan* v. *Louisiana*, 118 U. S. 455, 462, 464; *People ex rel.* v. *Warden, etc.*, 144 N. Y. 529 ; *People* v. *Ewer*, 141 id. 129 ; *Young* v. *Flower*, 22 N. Y. Supp. 332 ; *M. S. P. & S. R. R. Co.* v. *Milner*, 57 Fed. Rep. 276 ; *Seguin* v. *Schultz*, 31 How. Pr. 398.)  Not only was there a clear case for the exercise of the power and performance of the duty devolved upon the commissioner of health by these statutes, but he exercised the power and performed the duty in a lawful and discreet manner in the case of the relators.  (Const. art. 1, § 6 ; 37 N. Y. 661 ; *Murray* v. *H. L. & I. Co.*, 18 How. [U. S.] 272 ; *People ex rel.* v. *Keeler*, 99 N. Y. 463, 479 ; *Happy* v. *Mosher*, 48 id. 313 ; *Henderson* v. *Mayor, etc.*, 92 U. S. 260 ; *Miller* v. *B. & M. R. R. Co.*, 70 N. Y. 223.)  The judge at Special Term should have dismissed the writ and remanded the relators to the custody of the commissioner to be detained by him for such portion of the period of sixty days fixed by the proclamation as he in his discretion might deem necessary.  (Laws of 1886, chap. 533, § 5 ; *People* v. *Cavanagh*, 2 Park. 650 ; *People* v. *Nevins*, 1 Hill, 154; *People* v. *Cassell*, 5 id. 164; *People ex rel.* v. *Liscomb*, 60 N. Y. 589, 605; *People ex rel.* v. *Jacobs*, 66 id. 8; *People* v. *Baker*, 89 id. 460 ; *In re Parker*, 5 M. & W. 31 ; *In re Shuttleworth*, 9 Ad. & El. 651 ; *Ex parte Dixon*, 1 Abb. [N. C.] 118 ; *Ex parte Lamont*, 11 id. 120 ; Code Civ. Pro. § 2039 ; *People* v. *Grant*, 111 N. Y. 584 ; *People* v. *McEwen*, 67 How. Pr. 105.)

GRAY, J.  The question presented, like all those which involve the right to restrain the citizen in his personal liberty, or to interfere with his pursuit of a lawful avocation, demands a careful consideration of the provisions of law, under which the right is alleged to be conferred.  Where such a right is claimed, it must appear very clearly and satisfactorily, not only that it has been conferred by the law, but, also, that in its exercise the facts were present which justified it.  The validity of the law is not so much called in question, as the right to enforce its provisions is.  For his authority,

the respondent refers to certain provisions of the charter
of the city of Brooklyn (Chapter 583, title 12); where
the health comissioner is empowered as follows: " Section 5.
In the presence of great and imminent peril to public health
of the city of Brooklyn, by reason of impending pestilence, it
shall be the duty of said commissioner to take such measures
*   *   *   for the preservation of the public health from such
impending pestilence as he may in good faith declare the pub-
lic safety and health to demand, and the mayor of the said
city and the president of the Medical Society of Kings County
shall also in writing approve. And such peril shall not be
deemed to exist, except when and for such period of time as
the mayor, president of the medical society and the health
commissioner shall by proclamation declare." The provisions
of section 14 of chapter 661 of the Laws of 1893 (the
" Public Health Law "), which relate to "contagious and
infectious diseases," are, also, referred to. They are that,
" Every such local board of health shall guard against the
introduction of contagious and infectious diseases by the exer-
cise of proper and vigilant medical inspection and control of
all persons and things arriving in the municipality from infected
places, or which from any cause are liable to communicate
contagion. It shall require the isolation of all persons and
things infected with or exposed to such disease, and provide
suitable places for the treatment and care of sick persons who
cannot otherwise be provided for.   *   *   *   It shall provide
at stated intervals a suitable supply of vaccine virus, etc.,
*   *   *   and at all times provide thorough and safe vaccina-
tion for all persons in need of the same." It would seem
from a consideration of these provisions of law that, while
responsibility and a wide authority have been conferred
upon the respondent in the administration of his important
office, nevertheless, the statute contemplates, when persons or
property are to be affected by the isolation mentioned,
that the fact must exist, either that they are infected with
the contagious disease, or that they were exposed to it.
But I find no warrant for the rather extraordinary declaration

of the commissioner that "wherever any person shall refuse to be vaccinated, such person shall be immediately quarantined and continued in quarantine until he consents to such vaccination." Of course, if we could regard it as a mere expression of his opinion as to what measures would be necessary to prevent pestilence, this document would not demand our consideration; but, being issued officially and with the formal approval of the mayor and the president of the Medical Society of Kings County, as required by the city charter, it assumes the importance of a public and official paper, and the inquiry suggests itself as to the authority for its terms. That the powers conferred upon the health commissioner by the provisions of the city charter give to him the right to compel the vaccination of every citizen in the city of Brooklyn, if he would escape quarantine, seems an unnecessary and it is an unwarrantable inference from the language. It is difficult to suppose that the legislature would invest local officials with such arbitrary authority over their fellow-citizens and the language of an act would have to be very plain before the court would be warranted in giving it such a construction. But the legislature has done nothing of the kind. In the presence of imminent peril to the public health of the city, by reason of an impending pestilence, he may take such measures as he declares the public safety demands and which are approved by the mayor and the president of the medical society. This language is sufficient to confer the needed authority to do all acts which in his judgment, as approved by his associates in the matter, are necessary to be done to improve the sanitary conditions of the city and to preserve the public health from being affected. That authority would, undoubtedly, be sufficient to deal summarily with cases where persons are stricken with a contagious or infectious disease, or have been actually exposed to it, and it is broad enough for every practical purpose in dealing with the facts of any case presented; but the authority is not given to direct, or to carry out, a quarantine of all persons, who refuse to permit themselves to be vaccinated and it cannot be implied.

Certainly no power should be implied from an act, which is not necessary to its due execution; and where the liberty and the property of persons are sought to be brought within its operation, the case must be clearly seen to be within those intended to be reached.

Passing to the question of what power is vested in the commissioner by virtue of his office, under the Public Health Law, it is very clear that an "isolation of all persons and things" is only permitted when they are "infected with or exposed to" contagious and infectious diseases. That that language means, when speaking of persons and things "exposed" to disease, the actual fact and not a mere possibility, is plain from the language which precedes it in the section. The local board of health is to guard against the introduction of contagious and infectious diseases, by the exercise of medical inspection and control of persons and things, either arriving from infected places, or from any cause liable to communicate contagion. Obviously, there must be an inspection of persons and things and the resulting discovery, if they are not actually "infected" with disease, that they have been "exposed" to it, and that the conditions actually exist for a communication of contagion, in order to bring into operation the power to isolate. The meaning of the particular language in the section is, and it should read, that the board of health shall "require the isolation of all persons and things infected with, or *who have been exposed* to such diseases." In the present case, the relators are not alleged to have been infected with any contagious or infectious disease, or to have been exposed to such. The allegations of the commissioner of health are based only upon information and belief and, when referring to the necessity for the stringent measures adopted towards the relators, they simply assert the prosecution of a general express business, which is, in part, carried on through what "has been one of the worst infected centres of the city." It is not alleged that the business had included the carrying of infected articles, or articles from infected centres, or that the relators had been exposed to

contagion; but possibilities, merely, are alleged. It is alleged that the business *may* include the carrying of articles, which *may* come from infected centres and the relators *might* be seized with smallpox; and, if they were permitted to continue in their business without being vaccinated, they *might* be the means of serious consequences to other citizens with whom they came in contact. Such allegations fall far short of stating facts, upon which the commissioner of health would be authorized to take such drastic measures, as to effect the imprisonment of citizens by quarantining them in their houses. He had no jurisdiction to make the order here, unless there was, in fact, before him a case where the parties were either infected with, or had been actually exposed to the disease of smallpox. It was necessary to that jurisdiction that the danger should actually have existed, in the infection of the person or things, or in their having been exposed to the disease. (See *People ex rel. Copcutt* v. *Board of Health*, 140 N. Y. 1.) While he was vested with great and extensive powers, in order, in the presence of danger, to act summarily for the preservation of the public health, he was bound to show a state of facts which justified such an exercise of those powers.

I think no one will dispute the right of the legislature to enact such measures as will protect all persons from the impending calamity of a pestilence and to vest in local authorities such comprehensive powers as will enable them to act competently and effectively. That those powers would be conferred without regulating or controlling their exercise, is not to be supposed and the legislature has not relieved officials from the responsibility of showing that the exercise of their powers was justified by the facts of the case. The question here is not whether the legislature had the power to enact the provisions of section 24 of the Health Law; but whether the respondent has shown that a state of facts existed, warranting the exercise of the extraordinary authority conferred upon him. Like all enactments which may affect the liberty of the person, this one must be construed strictly; with the saving

consideration, however, that, as the legislature contemplated an extraordinary and dangerous emergency for the exercise of the power conferred, some latitude of a reasonable discretion is to be allowed to the local authorities upon the facts of a case.

As the respondent has utterly failed to show any facts which warranted the isolation of the relators, they were properly discharged and the order of the General Term should be reversed and that of the Special Term affirmed.

All concur, except HAIGHT, J., not voting.

Ordered accordingly.