## CHARLES A. PIERCE *et al.*
### *v.*
## E. B. DILLINGHAM.

*Opinion filed June 16, 1903.*

1. LIVE STOCK COMMISSIONERS—*powers of board cannot be extended by intendment.* The powers of the State Board of Live Stock Commissioners are derived from the statute of its creation, and can not be extended by intendment.

2. SAME—*act to prevent spread of diseases among animals should not be arbitrarily enforced.* The act of 1887, (Laws of 1887, p. 8,) to prevent the spread of contagious diseases among domestic animals, should be so enforced as not to arbitrarily and unreasonably interfere with the rights of citizens.

3. SAME—*what essential to right of the board to request proclamation against shipping in stock.* The State Board of Live Stock Commissioners has no power to request the issuance of a proclamation by the Governor restricting the importation of live stock into this State, under section 4 of the act of 1887, unless some contagious or infectious disease *has become epidemic* among live stock in certain localities in other States, or the condition of stock in those localities renders the animals *liable to convey such disease.*

4. SAME—*when report of the live stock board does not comply with the statute.* A report by the State Board of Live Stock Commissioners to the Governor stating that tuberculosis prevails, "to a greater or less extent," among the dairy and breeding herds of "all the States and Territories," etc., and that cattle affected with this disease being brought into the State are dangerous and liable to communicate said disease to other cattle, does not comply with section 4 of the act of 1887.

5. SAME—*reasonableness of rules of live stock board is for the court.* The reasonableness of the rules and regulations adopted by the State Board of Live Stock Commissioners to effectuate the purpose of its creation is a question for the courts.

6. SAME—*when rule of live stock board is unreasonable.* A rule of the live stock commissioners requiring "dairy and breeding cattle" to be subjected to the tuberculin test before being imported, and authorizing the seizure and slaughter, without compensation, of any such cattle imported without such test if they respond to the test when made by the board, is unreasonable and arbitrary.

7. REPLEVIN—*replevin of cattle quarantined by live stock board—justification.* In replevin to recover cattle quarantined by the State Board of Live Stock Commissioners, if the report and rules of the board, and the Governor's proclamation based thereon, are set up

in justification, the plea must show that such rules and proclamation are authorized by law and that their enforcement is necessary.

8. PLEADING—*a plea is bad which lacks a necessary averment.* A plea in replevin which attempts to justify a seizure of cattle by the live stock board's veterinarian because a certain test for tuberculosis required by the board had not been applied to them before their importation, is bad on demurrer, in the absence of an averment that such test would have been effective to detect the disease.

*Pierce* v. *Dillingham*, 96 Ill. App. 300, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Second District affirming a judgment of the circuit court of Kane county in an action of replevin brought by appellee to recover from appellants twenty-three head of cattle. A plea of justification was filed to the declaration, to which demurrers, special and general, were filed. The demurrers were sustained and defendants elected to stand by their plea, the sufficiency of which is the only question presented on this appeal.

At the time the facts in this case took place, appellant Charles A. Pierce was veterinarian of the State Board of Live Stock Commissioners, and on the 19th of May, 1900, appellee imported into this State, from Wisconsin, twenty-three dairy and breeding cattle, such cattle being unaccompanied with a certificate of tuberculin test, as required by the rules of said State board. On said date appellant Charles A. Pierce, as such veterinarian, in accordance with the rules of said board, quarantined and took possession of said cattle at the stock yards at Dundee, Illinois, with the aid of the sheriff of Kane county, and placed Lyman Andrews in charge as custodian, and Pierce proceeded to test such cattle. On May 22, 1900, appellee filed his affidavit in replevin, alleging the wrongful detention of said cattle and that he

was entitled to their possession. In due course, decla-ration and plea thereto were subsequently filed. The plea sets up that the State Board of Live Stock Commis-sioners on June 13, 1899, reported, in writing, to John R. Tanner, Governor, that "tuberculosis, a dangerously contagious disease, prevails to a greater or less extent among the cattle constituting the dairy and breeding herds of all the States and Territories of the United States and foreign countries, and that cattle affected with this disease, brought into the State of Illinois, are dangerous, and liable to communicate said disease to other cattle with which they are brought in contact," and requesting the Governor to issue a proclamation in pursuance of the terms of "An act to revise the law in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals," and requesting the Governor, in such procla-mation, to schedule all States and Territories within the United States, other than the State of Illinois, and all foreign countries, and prohibit the importation of dairy and breeding cattle (cows, bulls or calves,) therefrom into the State of Illinois, except in accordance with the rules and regulations adopted by said board; that the Board of Live Stock Commissioners on June 13, 1899, submitted with their report to the Governor a set of rules and regulations prescribed by the said board to govern the importation of dairy and breeding cattle into the State of Illinois from States and Territories to be sched-uled by the Governor's proclamation, "as requested by the said report with reference to tuberculosis among cattle;" that the rules so submitted were on the 13th day of June, 1899, duly approved by the Governor. The rules of said board are set out in the plea, and are substan-tially as follows:

Rule 1. Any shipper or owner of dairy or breeding cattle in States or Territories scheduled or to be sched-uled by the Governor on account of tuberculosis among

cattle, desiring to ship such cattle into the State of Illinois, must, before offering the same for shipment to any railroad or transportation company or before driving the same into this State, have the cattle tested with tuberculin by a veterinarian recognized by the sanitary authorities of the State in which such owner or shipper resides, and authorized by such authorities to make such test.

Rule 2. Before offering any such cattle for shipment, as aforesaid, or before driving the same into the State of Illinois, a statement, in duplicate, of temperature taken in the test provided for in rule 1, certified by such duly authorized and recognized veterinarian, with the affidavit on the back thereof of the owner, setting forth that the cattle to be shipped or transported or driven into this State are the same referred to in the statement of temperature therein, must be sent to the State Board of Live Stock Commissioners at Springfield, Illinois, for endorsement or acceptance and approval of such test, which endorsement, if the test is accepted and approved, shall be made by the secretary or chairman of said board, and the original copy of the statement, thus endorsed, will be returned to the owner.

Rule 3. In conducting such tuberculin test the veterinarian shall take at least four preliminary temperatures at intervals of two hours during the day of the evening of injecting, and at least five temperatures at intervals of two hours, commencing ten hours after injection.

Rule 4. No shipment of dairy or breeding cattle destined to any point in the State of Illinois, from States and Territories prescribed and designated in the proclamation of the Governor aforesaid, shall be received by any railroad or transportation company doing business in the State of Illinois, from the original shipper or from any connecting railroad or transportation company, unless the same be accompanied by the certificate designated in rule 2, properly endorsed, as provided therein, such certificate to be attached to the way bill, memo-

randum bill or bill of lading accompanying the shipment and to be delivered with said bill to the consignee.

Rule 5. Any dairy or breeding cattle (cows, bulls or calves,) shipped or driven into the State of Illinois from other States and Territories designated and described in the Governor's proclamation aforesaid, without being accompanied by the certificate aforesaid, properly endorsed, will, upon discovery, be placed in quarantine until tested with tuberculin by a veterinarian designated by this board, which test shall be made at the expense of the owner, and any cattle that shall re-act to such test and be condemned will be destroyed without compensation to the owner.

The plea then recites that the Governor, in pursuance of such report, issued a proclamation (which is set out hereafter). The plea further recites: "That on the 19th day of May, 1900, the said proclamation and the said rules of the said State Board of Live Stock Commissioners being then in full force and virtue and unrevoked, the said twenty-three cows mentioned in said declaration, then and there being dairy and breeding cattle, arrived in Dundee, Kane county, Illinois, in a special stock car of the Chicago and Northwestern Railway Company, and were there delivered by the said railway company to the plaintiff, which said twenty-three cows had been, during the month of May, 1900, shipped into the State of Illinois from the State of Wisconsin by the plaintiff, and which said cows were not then and there accompanied by a certificate of tuberculin test of the said cows, as designated in rule 2 of the said rules and regulations of said Board of Live Stock Commissioners of the State of Illinois, approved by the said Governor, and which said twenty-three cows were intended to be used for dairy and breeding purposes in said State of Illinois; that this defendant Charles A. Pierce, assistant State veterinarian, then and there, by virtue of the statutes of this State and the said proclamation and said rules,

served a notice of quarantine of the said twenty-three cows upon the plaintiff personally, and after the service of the said quarantine notice this defendant Charles A. Pierce called upon this defendant H. F. Demmer, who was then and there sheriff of Kane county, Illinois, to assist him, the said defendant Charles A. Pierce, to take possession of the said twenty-three cows, and the defendant Charles A. Pierce, as such veterinarian, assisted by the said H. F. Demmer, as such sheriff, took possession of the twenty-three cows, for the purpose that the said defendant Charles A. Pierce, as such veterinarian, might test them with tuberculin, and this defendant Charles A. Pierce, as such veterinarian, then and there proceeded immediately to test the said twenty-three cows with tuberculin, in accordance with the said rule 5 of the said rules and regulations of the said State Board of Live Stock Commissioners, hereinbefore set forth, which is the same taking and detention in the said declaration above supposed, and none other."

H. J. HAMLIN, Attorney General, (C. H. WAYNE, and F. W. JOSLYN, of counsel,) for appellants:

A rule of the live stock board prohibiting a railroad from importing diseased animals into this State, and, for the purpose of self-protection, establishing quarantine and reasonable inspection, is proper. *Salzenstein* v. *Mavis*, 91 Ill. 400.

A rule of the State board, duly organized and existing, is not invalid because it requires a test of an animal imported into this State from a State scheduled against by Governor's proclamation, to ascertain if it is affected with tuberculosis, at the owner's expense. *People* v. *Harper*, 91 Ill. 357.

A rule of the State board which authorizes the destruction of an animal affected with tuberculosis,—a dangerously contagious disease,—without compensation to the owner, is valid and legal. The one who acts under

the rule to protect himself must be able to show affirmatively that the animal so destroyed was so affected. *Pearson* v. *Zehr*, 138 Ill. 48.

The State Board of Live Stock Commissioners is a *quasi* public corporation, and it is now too late to question the power to create such agencies and invest them with such powers as shall be appropriate and necessary to effectuate the objects of their creation. *People* v. *Harper*, 91 Ill. 366; *Wilcox* v. *People*, 90 id. 192; *Chicago* v. *Wright*, 69 id. 318.

The police power of the State extends to the protection of the lives, health and property of the people. *Railway Co.* v. *Chicago*, 140 Ill. 309.

Power to enact sanitary regulations which have the force of law may be conferred on a board by the legislature. *Patinsky* v. *People*, 11 Hun, 390; *People* v. *Special Sessions*, 7 id. 214; 2 Am. & Eng. Ency. of Law, 429-436.

Where the sanitary commission, as a precautionary measure, has excluded the cattle of another State from the State, as affected with a contagious and infectious disease, it will be presumed that their judgment and discretion were properly exercised. *Railway Co.* v. *Smith*, 49 S. W. Rep. 627.

When an action of replevin is brought by the owner to recover possession of cattle held by a sheriff under an order issued by the live stock sanitary commission requiring him to hold said cattle in quarantine, said order constitutes *prima facie* justification of the sheriff's refusal to return said cattle during the quarantine period. *Hardwick* v. *Brookover*, 30 Pac. Rep. 21.

RUSSELL & HAZELHURST, and D. B. SHERWOOD, for appellee:

The power and authority delegated by the legislature to the State Board of Live Stock Commissioners and to the Governor, being in derogation of the common law, must be strictly construed.

Where an affirmative statute introductive of new law directs a thing to be done in a certain manner it can be done in no other manner. Potter's Dwarris on Stat. 72; *Diversey* v. *Smith,* 103 Ill. 378.

Where power is conferred on a municipal corporation to enact rules, such rules must be reasonable. *Chicago* v. *Tugman,* 78 Ill. 405; *Hurst* v. *Warner,* 102 Mich. 247; *Potts* v. *Breen,* 167 Ill. 67.

The power conferred by statute upon the State Board of Live Stock Commissioners to make rules and regulations does not authorize such board to prescribe rules and regulations that are unreasonable or that restrict rights and privileges guaranteed by public law. *Potts* v. *Breen,* 167 Ill. 67; *Laughbaugh* v. *Board of Education,* 177 id. 572; *State* v. *Burge,* 37 L. R. A. 157; *In the matter of Smith,* 48 Am. St. Rep. 770; *People* v. *Board of Health,* 37 id. 573.

A rule or regulation prohibiting the importation of cattle from all other States or countries is invalid, where the State only authorizes such prohibition of importation from certain localities where a dangerous or infectious disease exists. *Hurst* v. *Warner,* 102 Mich. 247.

A rule or regulation making the importation of a certain kind of cattle an offense, and which does not prohibit the importation of certain other kinds of cattle from the same locality that are subjected to the same exposure, is illegal and void. *Bailey* v. *People,* 190 Ill. 28; *Harding* v. *People,* 160 id. 459.

Police power does not justify class legislation. *Eden* v. *People,* 161 Ill. 296.

There is no presumption in law, arising from the proclamation of the Governor, that tuberculosis is a contagious disease. *Davis* v. *Walker,* 60 Ill. 452.

It is the fact of a contagious disease, or of exposure thereto, which, under the statute, gives the power to the State Board of Live Stock Commissioners to quarantine, and without that fact exists no authority to quarantine exists. *Pearson* v. *Zehr,* 138 Ill. 48.

If the statute was the same as these rules and regulations, it would clearly be unconstitutional. *In re Barber*, 39 Fed. Rep. 641; *Harvey* v. *Huffman*, 39 id. 646.

Mr. JUSTICE RICKS delivered the opinion of the court:

The only question presented for determination in this case is, did the plea of appellants set up sufficient facts to give legal justification for their acts in the premises? If so, the demurrer filed by appellee should have been overruled, otherwise it was properly sustained.

Legislation having for its object the limitation and stamping out, as far as human precautions can, infectious diseases of man or beast is of vital importance, not only because of the salutary results sought to be gained thereby, but also because the means to be employed must generally involve an infringement of personal liberty or interference with private property, and when such is the case, the provisions of the law under which it is claimed such rights of interference are conferred demand a most careful consideration. "Where such right is claimed, it must appear very clearly and satisfactorily not only that it has been conferred by law, but also that in its exercise the facts were present which justified it. The validity of the law is not so much in question as the right to enforce its provisions. Certainly no power should be implied from an act which is not necessary to its due execution, and where the liberty and property of persons are sought to be brought within its operation, the case must be clearly seen to be within those intended to be reached." *In re Smith*, 146 N. Y. 68; 48 Am. St. Rep. 769.

The State Board of Live Stock Commissioners is a creation of the statute and must derive its authority therefrom. That section of the statute under which the appellants in this case assumed to act is penal in its nature, hence requires a strict construction. Its powers cannot be extended by intendment. Though the authority conferred on this board may permit it some latitude

of action, yet its powers must be restricted to the enforcement of some statute relating to some particular condition or emergency in respect to the live stock of the State.   *State* v. *Burdge*, 37 L. R. A. 157.

Section 4 of the statute in relation to the suppression and prevention of the spread of contagious and infectious diseases among live stock provides, (Hurd's Stat. 1899, p. 155,) as follows: "Whenever said board of commissioners shall report to the Governor that such diseases have become epidemic in certain localities in other States, or that their condition would render such domestic animals liable to convey such diseases, he may, by proclamation, schedule such localities, and prohibit the importation of any live stock of the kind diseased into the State, except under such regulations as may be prescribed by the said board and approved by the Governor."

Assuming to comply with the requirements of this section, the State Board of Live Stock Commissioners, on June 13, 1899, reported to the Governor of this State "that tuberculosis, a dangerously contagious disease, prevails to a greater or less extent among the cattle constituting the dairy and breeding herds of all the States and Territories of the United States and of foreign countries, and that cattle affected with this disease, being brought into the State of Illinois, are dangerous and liable to communicate said disease to other cattle with which they are brought in contact, and respectfully request your Excellency to issue a proclamation in pursuance of the terms of said above entitled act, scheduling all States and Territories within the United States, other than the State of Illinois, and all foreign countries, and prohibiting the importation of dairy or breeding cattle (cows, bulls or calves,) therefrom into the State of Illinois, except in accordance with the rules and regulations adopted by this board and herewith submitted for your approval." Pursuant to the reception of said report by the Governor he made proclamation as follows:

"Now, therefore, I, John R. Tanner, Governor of the State of Illinois, as provided by section 4 of the above entitled act, do hereby make proclamation of the foregoing facts and schedule the following territory, to-wit: All of the States and Territories of the United States other than the State of Illinois, and all foreign countries. And prohibit the importation of dairy or breeding cattle (cows, bulls or calves used or intended to be used for dairy or breeding purposes,) from the above described territory into the State of Illinois except under the regulations hereto attached and made a part hereof, that have been prescribed by the State Board of Live Stock Commissioners and approved by me."

Careful examination convinces us that the report made by the State board in this case is not such as is required by the statute as a prerequisite for the issuance by the Governor of a proclamation scheduling certain localities and prohibiting or restricting the importation of live stock into the State. The statute's essential requirement of the report is, "that such diseases have become epidemic in certain localities in other States, or that their condition would render such domestic animals liable to convey such diseases." The term "such diseases" must relate to "contagious or infectious diseases" designated in the preceding section 2. Under section 4 such report is only justified when contagious or infectious diseases become epidemic. The board did not report that such was the case in the territory they ask to have scheduled. They simply state that a certain "contagious disease prevails to a greater or less extent  *  *  *  in all States and Territories of the United States." A contagious disease may "prevail to a greater or less extent" and still there be no epidemic. Contagious disease simply means one communicable by contact. The victim of such a disease might be so isolated from others of its species as to render contact and an epidemic impossible. The other alternative of the statute is, "or that their

condition would render such domestic animals liable to convey such diseases." The report of the board does not state that the condition of all cattle in the district scheduled, or even all "dairy or breeding cattle," which is the particular class sought to be scheduled against, is such "that their condition would render such domestic animals liable to convey such diseases." The report simply states "that cattle affected with this disease * * * are liable to communicate said disease." It seems clear to us that neither of the statutory requirements on which to base such a report has been complied with. If not, the proclamation of the Governor was unwarranted and the acts of the appellants in the premises were without legal justification.

We also think that the intention of that portion of the statute which says "that such diseases have become epidemic in certain localities in other States" is not met by the report that "tuberculosis, a dangerously contagious disease, prevails to a greater or less extent among the cattle constituting the dairy and breeding herds of all the States and Territories of the United States and foreign countries." The purpose of the statute no doubt is to vigilantly guard the health conditions of the domestic animals of the State, but it should be done with due care that no order entered to secure it shall be so sweeping and arbitrary as to interfere unreasonably with the rights of its citizens or place unnecessary restrictions upon their trade. (*Wilson* v. *Alabama, etc. Railroad Co.* 77 Miss. 714; 52 L. R. A. 357.) We think it was not the intention of the legislature that the meaning of the term "certain localities in other States" should be so extended as to comprehend the whole world outside of the State of Illinois, nor do we think it a legitimate exercise of the police power to so enlarge the meaning of the statute and invest this board with so arbitrary and sweeping a power. The term "locality" has a well understood and limited application, and without the plea averring (which it does not) that

the cattle replevied came from a locality where the disease was epidemic, or that they were themselves affected or that their condition was such as to render them liable to convey tuberculosis, we think it would be extending the authority of this board beyond unheard-of limits to give it the right to seize private property and subject it to some test that it might provide for in its rules and regulations when there is no ground whatever, or even claim advanced, for suspecting that the stock in question was not free from all disease. In fact, the whole defense of appellants is predicated upon the charge above that the cattle in question had not been subjected to the tuberculin test prescribed by the board, before shipment. It is not alone the fear or apprehension of possible danger, unsupported by reasons, that justifies so grave an interference with private rights. (*Town of Greensboro* v. *Ehrenreich*, 80 Ala. 579; 60 Am. Rep. 130.) In the opinion of the Appellate Court Justice Waterman aptly said (p. 311): "The report of the State board to the Governor does not, in accordance with the statute, state that any contagious or infectious disease has become epidemic, either in the State of Wisconsin or any other State, Territory or country; nor does it declare that the condition of the domestic animals of the State of Wisconsin or any other locality is such as would render such domestic animals liable to convey such diseases. It merely declares that tuberculosis, a dangerously contagious disease, prevails to a greater or less extent among the cattle constituting the dairy and breeding herds of all the States and Territories of the United States and foreign countries, * * * that is to say, the State board reports that one or more of the cows in the dairy and breeding herds of the State of Wisconsin, Asia, Europe, South America and the rest of the world was or were affected with tuberculosis, and upon such report as to one cow or more, asked the Governor to, and he did, in so far as by a proclamation he could, prohibit the importation of dairy or

breeding cattle (cows, calves or bulls,) into the State of Illinois. * * * However great may be the powers of the State board, it is manifest they are only such as are conferred by the statute. The statute has authorized the Governor to, by proclamation, schedule localities from which the importation of cattle cannot be made, only upon a report by the board that infectious and contagious diseases prevail in such localities, or that the condition of cattle there is such as would render the domestic animals thereof liable to convey such diseases."

Rule 5 of the set of rules and regulations adopted by said board, submitted to the Governor and attached to and made a part of his proclamation, provides that any cattle of the class scheduled against, brought into the State, unaccompanied by the certificate provided for in rule 2, shall, "upon discovery, be placed in quarantine until tested with tuberculin by a veterinarian designated by this board, which test shall be made at the expense of the owner. Any cattle that shall re-act to such test and be condemned will be destroyed without compensation to the owner." Rule 1 provides for the application of such test to cattle outside of the State as a prerequisite to their being brought into it. Rule 3 provides for the application of the test in a certain manner. There is no averment in either the rules or the plea that tuberculosis is, as a matter of fact, a contagious disease; nor is it averred in either the rules, plea or report to the Governor that the test prescribed is a sure means of its detection, and the rules proceed on the assumption of both as absolute facts; nor is it averred that such test has received the legislative sanction of this State. They assume that this test gives warrant to the board for the slaughter of such animals as are affected by the test in a certain way,—and that, without compensation to the owner. We held in *Davis* v. *Walker*, 60 Ill. 452, that although a statute assumed a certain theory as a fact, a legal presumption of the truth of the theory did not fol-

low, and that liability could be avoided only upon actual proof of facts warranting the presumption. In *Pearson* v. *Zehr*, 138 Ill. 48, we held that the Board of Live Stock Commissioners could not exempt itself from liability for the slaughter of animals, except upon actual proof that the slaughtered animals were affected with or had been exposed to a certain disease. The test proposed here may be efficacious, or it may not. There is no averment in the plea that it is. So far as disclosed it may be of no utility whatever. Certainly, then, the plea cannot be said to give authority for the acts of appellants. In *Potts* v. *Breen*, 167 Ill. 67, we held that the State Board of Health had no authority to establish and cause to be enforced a rule requiring all children to be vaccinated as a prerequisite to attendance at public school, where the children had not been exposed to and were not shown to be affected with small-pox and said disease was not declared or shown to be epidemic. So far as the pleadings in this case disclose, the cattle in question were not affected with nor had they been exposed to any disease, contagious or otherwise; nor was there any averment in the plea that the condition of the cattle was such as to render them liable to convey such disease, or that an epidemic of tuberculosis prevailed in the locality from which they came. The principle recognized in the case last cited has been held to be the law in numerous other cases. *State* v. *Burdge, supra; In re Smith, supra.*

. We think this plea bad for many reasons, among which are, that it does not appear by the report of the Board of Live Stock Commissioners that the disease of tuberculosis existed in an epidemic form in any locality, State, Territory or foreign country; that it is nowhere averred in the plea that the stock in question came from any locality, State, Territory or country where the disease was epidemic, or that they were in fact affected with it or that their condition was such that it might render them liable to convey such disease.

Appellants insist, however, that though it be con-
ceded that the report of the board, the proclamation of
the Governor and the averments of the plea are all too
broad and too general and all lacking in certainty to a
reasonable intent, still the demurrer should have been
overruled, the plea sustained and appellee required to
proceed to trial, and then, if appellants could prove that
the cattle in question did, as a fact, come from a partic-
ular locality in Wisconsin where tuberculosis did exist
to the extent that cattle brought therefrom were liable
to convey the disease to cattle in this State, all the gen-
eral terms of the report and proclamation could be re-
jected as surplusage and a verdict sustained. This seems
to us to be begging the question. The report, rules and
regulations of the board and the proclamation of the
Governor alone are pleaded as a justification for the
taking of the cattle in question, and appellants' justifi-
cation is to be determined by the validity and force that
are to be given to such report, rules and proclamation.
As we view it, the question of the force and validity of
the proclamation depends upon the report and rules up-
on which it is based. With them it must stand or fall as
a whole. There is no part of it that may be said not to
be vital to the whole of it. There is no part of it that
can be so separated from any other part, or from the
whole, that it can be said that part may be rejected as
surplusage. It is a familiar rule of construing statutes,
ordinances and the like, that they must be construed
together and as a whole, and if any part of them, and
any part of the whole, is so material that it can be said
of it that the whole would not have been enacted or or-
dained or declared without the part, then the whole must
fall with the part. The proclamation was based upon
the report of the board, and with the broad and sweeping
terms of the report, including, as it did, all the States,
Territories and foreign countries, how can this or any
court say that the Governor, in issuing his proclamation

and giving, or attempting to give, force and efficacy to the statute which it is urged applies to this case, regarded any part of that report as surplusage or as unimportant or his proclamation in any way as restricted, when by the proclamation itself it appears that he seems to have taken especial pains to make it as broad, in all respects, as the report?

The proclamation of the Governor, pursuant to the report and request made by said board, makes a discrimination between different classes of cattle, and the restrictions imposed are limited alone to "dairy or breeding cattle (cows, bulls or calves)." If the restricted class is more susceptible to the disease sought to be prohibited and guarded against or more liable to convey it, such facts are nowhere averred in the plea nor stated in the report on which the Governor's proclamation is based, and the court cannot infer that such is the case. The board is doubtless to be given some latitude in the formation of rules and orders, when an emergency exists, to effectuate the purpose of its creation, but the reasonableness and legality of its rules are for the court to determine, as has been often held. (*Wilson* v. *Alabama, etc. Railroad Co. supra; In re Smith, supra; Hurst* v. *Warner,* 102 Mich. 238; *State* v. *Burdge, supra; Kosciusko* v. *Slomberg,* 68 Miss. 469; 12 L. R. A. 528.) It will not be supposed that the legislature intended to clothe this board with an authority to pass rules or regulations having the effect of law and exempt it from the necessity of conforming to the fundamental principles of constitutional legislation. The operation of the rule here sought to be enforced extends beyond the scope of necessary protection into the domain of restraint of lawful trade. (*Town of Greensboro* v *Ehrenreich, supra.*) Under the requirement here sought to be enforced, one person might buy and bring into this State, without any restriction imposed upon him, steers of the same breed and from the same lot from which another person bought cows or calves, yet the latter would

be subjected to burdens and restrictions from which the former are exempt. A law making that an offense if committed by a person in one class of business which if done by another person engaged in another branch of the same business would be lawful, without reasons for distinctions between the two, is unconstitutional. All persons subject to law have a right to be governed by general laws. Laws and regulations entirely arbitrary in their character and singling out particular persons in distinction from others in the same community are not of that class, and hence are unconstitutional. We regard the effect of the Governor's proclamation and the rules established by the board in this case as producing unwarranted and illegal discrimination. (*Harding* v. *People*, 160 Ill. 459; *Eden* v. *People*, 161 id. 296; *Bailey* v. *People*, 190 id. 28.) The validity of the statute upon which the proclamation is predicated is not put in question, but the question presented is as to its application, and whether the board and the Governor, in their proceedings, kept within the terms of the statute, and whether the plea, merely reciting and averring the fact of the proclamation and the report and rules of the board, makes a sufficient justification.

Appellants cite and rely upon a number of cases in other States, chiefly *St. Louis and Southwestern Railway Co.* v. *Smith*, 49 S. W. Rep. 627, *Hardwick* v. *Brookover*, 30 Pac. Rep. 21, and *State* v. *Snell*, 42 Atl. Rep. 869, and while there is much said in those cases that has application to the case at bar, and we are much impressed with the reasoning of those cases, yet we do not regard them as in accord with the views of this court relative to the powers of boards of this class and the force of proclamations, or as applicable to our statute. In *State* v. *Snell*, *supra*, the statute of Rhode Island, upon which that case was based, provided expressly for the tuberculin test, and the court, in passing upon it, seemed to recognize that as sufficient authority for regulations as to the imposition of that

test. In *Davis* v. *Walker, supra,* we had under discussion a statute of this State relative to Texas or Cherokee cattle, and although the statute assumed by its provisions that all Texas or Cherokee cattle transported into this State were diseased or would at least communicate disease to the native cattle, in considering the statute this court said (p. 453): "It is true, the act of the legislature under which this suit was brought is based upon the theory, assumed as true, that Texas cattle do communicate disease. The legislature, undoubtedly, was convinced this theory rested upon satisfactory evidence and that the enactment of this law was a necessary precaution. It may have been so; but while it is the duty of a court to enforce the act, it is not a legal presumption that this theory in regard to the disease is true. That is a question of fact, which, when it arises, must be left open for the determination of a jury." The legislature in this State has not seen fit to declare the tuberculin test an efficient or certain one, nor does the Board of Live Stock Commissioners so declare, nor is it so declared in the plea, and unless it somewhere appeared in the plea of justification that such test would, in a reasonable degree or in some manner, determine the existence or non-existence of tuberculosis, it must be held an unreasonable and unjustifiable requirement that before stock of the class named shall be shipped into the State it shall be subjected to that test and due record thereof preserved, to be presented to the authorities in this State, and on failure of which the cattle, when brought into this State, may be quarantined, subjected to the test at the owner's expense, and if they re-act be slaughtered without compensation to the owner. With the views we have already expressed we deem it unnecessary to go into a further discussion of these authorities.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*