(43 Misc. Rep. 297.)

### In re BOYCE.

(Supreme Court, Special Term, St. Lawrence County. March, 1904.)

1. PRISONS—DUTY OF SHERIFF—CONVICT WITH CONTAGIOUS DISEASE.

Under County Law, §§ 92, 183 (Laws 1892, pp. 1766, 1782, c. 686), and Pen. Code, § 434, providing that a sheriff shall have the custody of the jails and the prisoners therein, and making it a misdemeanor to willfully expose a person affected with a contagious disease, a sheriff of a county jail situated in a village, who discovers that one of the prisoners is suf-

fering from a contagious disease, should remove the prisoner to a suitable place, and keep him there until he has served his sentence.

**2. COUNTIES—PESTHOUSE—COUNTY CHARGE.**

Where a sheriff selected a place as a pesthouse in which to place a prisoner from the county jail, suffering from a contagious disease, and such selection was ratified, under Laws 1900, p. 685, c. 324, § 8, by the purchasing committee of the county, having control of the sheriff's contracts and liabilities, the rent of the place selected, and the damages to its owner, are a proper county charge.

**3. SAME.**

The fact that the village president and the chairman of the village board of health assisted in the removal of a county prisoner from the jail to a pesthouse selected by the sheriff does not render the town, and not the county, liable for the expenses connected therewith.

Application of Ella Boyce for a writ of mandamus against the board of supervisors of St. Lawrence county. Writ granted.

L. P. Hale, for relator.
George H. Bowers, for defendant.

JOHN M. KELLOGG, J. The relator, with her family, having left her home, returned a few days afterward and found it occupied as a pesthouse, and designated under section 135 of the Code of Civil Procedure as a part of the county jail, and occupied by a prisoner who had been transferred, from the county jail, suffering from smallpox, and in charge of a deputy sheriff, and with a physician who had been employed to attend the patient. Food was furnished them from the county jail. Her bill for the rental of the house, the destruction of bedding, the cleaning, and other damages, was rejected by the board of supervisors; it feeling that it had not the power to pay the same, but that the town of Canton, in which the jail and the relator's house are situate, was liable, rather than the county. Viewed from the relator's and a property standpoint, the intrusion into her house and its occupancy was a clear violation of her rights, and without any authority; and undoubtedly the sheriff, the deputy sheriff, and the president of the village, and the physician in charge, were jointly and severally liable for such wrongful acts. The prisoner was not, probably, personally liable, from the fact that he had no control of himself; was, by compulsion, being maintained by the county; the sheriff's will, and not his own, controlling his action. Were the relator proceeding against the parties who invaded her home, it would not be material to inquire who first suggested the act, or who was the principal mover. Each would be liable for all of her damage. It is unnecessary to say that neither the town nor the county had the right to so use the relator's property, and that no public officer had authority to do so in its behalf. Viewed from a public standpoint, the public interest and the public good would commend, rather than blame, the different individuals for the part they took in this invasion of the relator's rights.

It being clear that the relator must be compensated, the only question is whether the county was chargeable with the support and maintenance of the prisoner after it became necessary to remove him from the county jail, so that the sheriff was capable of charging upon the county the result of the acts which he and those acting with him did in that

respect while caring for the prisoner.   Or, if the sheriff did not perform all of his duties, but neglected some of them, and those duties were performed by others with the knowledge and consent of the sheriff, whether the credit of the county is not fairly and equitably pledged therefor.   It is not the misfortune of, but, rather, a benefit to, the plaintiff, if, instead of having a remedy against the county, she may also have one against the town of Canton and the various individuals. The question here is, has she such remedy against the county?

In this county, by the local law (chapter 324, p. 683, Laws 1900), the sheriff is a salaried officer, and the "purchasing committee" has certain control or supervision over his contracts and the liabilities to be incurred by him.   And by section 7 (page 684) of that law "he shall be responsible for the custody, maintenance and control of all prisoners and persons detained in said jail."   Section 183 of the county law (Laws 1892, p. 1782, c. 686) provides that "each sheriff shall have the custody of the jails of his county and the prisoners therein, and such jail shall be kept by him or by keepers appointed by him for whose acts he shall be responsible."   Section 92 (page 1766) of the county law requires him to receive and safely keep all persons sentenced to imprisonment, and "he shall not, without lawful authority, let any person out of jail."   And by Pen. Code, § 434, it is made a misdemeanor to willfully expose a person affected with a contagious or infectious disease in a public place, except during his necessary removal therefrom; and, I think, with 72 people in the jail, seven of whom were attendants and members of the sheriff's family, and the others Chinese and other prisoners detained therein, the jail would be considered a public place, within the meaning of that statute.   The sheriff therefore seems to have been in a position where it was a violation of his duty to discharge or let the prisoner go, and it was a crime to keep him in the county jail.   This would necessarily give him a right to make the proper arrangements for keeping the prisoner elsewhere.   Section 24 of the public health law (Laws 1893, p. 1505, c. 661) authorizes the superintendent of the poor to remove an inmate suffering from such disease from the almshouse to such place as the local board of health may authorize, the expense to be borne by the county.   Section 92 of chapter 382 (page 525) of the Laws of 1889 requires that, in case of a contagious disease in the State Prison, the superintendent may cause the prisoners to be removed to some suitable place of security, where such of them as may be sick shall receive all necessary care and medical treatment.   The Code of Civil Procedure (section 135) authorizes "the physician to the jail" to certify as to the existence of a pestilential disease, and authorizes the county judge to designate another suitable place for the purpose of keeping some or all of the prisoners.   After the prisoner's removal to the relator's house, upon a petition of the physician to the jail, this house was so designated by the special county judge.   But it is said that, by section 144 of said Code, he had no power to make the designation, except in case the county judge was absent from the county, and that that fact does not appear.   But after the prisoner has served his sentence there, and the owner's compensation only is in question, it is a little late to successfully raise that objection. .  The jail physician obtained the order; the building was actually occupied by the sheriff, through his deputy and pris-

oner, and necessarily and properly so; the sheriff and the "purchasing committee" knew the facts; and the court is not bound, under the circumstances, to inquire whether the county judge was at the time within or without the county. But in order to charge the county for the use of the house, it was not necessary that it be designated under section 135 of the Code of Civil Procedure. From necessity and the duty of prompt action, the sheriff has the right to remove a smallpox prisoner to a suitable place, and charge the county with the expense thereof. The object of the section in question is to make the place, when selected, a legal jail, within the terms of the commitment of the various offenders. After the designation is made, the prisoner can raise no objection that he is not then confined in the county jail. The county, under the law and by necessity, must support and maintain the prisoners sentenced to its jail. Such support must include medical treatment as well as provisions and lodging, and, if the patient has a contagious disease, and the expense of his support, maintenance, and medical treatment is greater than otherwise would be, it may be unfortunate for the county; but it does not relieve it from its obligation, nor authorize it to turn its prisoners loose upon the county town, or shirk its responsibility upon the local board of health. The answering affidavits seek to show that the sheriff, when he discovered that the prisoner had smallpox, notified Dr. Wilson, who was the physician to the jail, and at the same time the health officer of the village, that the prisoner must be removed, and Dr. Wilson and the president of the village arranged for his removal to this house; the president personally guarantying to the physician employed payment for his services, and also to the deputy for his services as nurse. It was understood by all that the nurse must a deputy sheriff. It seems to me immaterial here how great or how little a part the president, the jail physician, the health officer, or the sheriff took in the several acts. They were all parties to the whole transaction. The board of health, in matters strictly committed to it, and acting in the manner provided by law, may act summarily and with the utmost vigor, and in those matters its powers are almost unlimited. But it must, in acting, find its warrant and authority within the terms of the statute. Matter of Smith, 146 N. Y. 68, 40 N. E. 497, 28 L. R. A. 820, 48 Am. St. Rep. 769.

The board of health took no action, but its chairman did take an active part. A board of health has nothing to do with a case of individual sickness, but is solicitous as to the public health. Except in the case of a contagious disease, the individual, if unable to care for himself, must find relief under the poor law (Laws 1896, p. 136, c. 225). By section 24 of the public health law, it is made the duty of the board of health to guard against the communication of contagious and infectious diseases by proper and vigilant medical inspection and control of persons and things arriving in the municipality from infected places, or that are liable to communicate contagion. "It shall require the isolation of all persons and things infected with or exposed to such diseases and provide suitable places for the treatment and care of sick persons who cannot otherwise be provided for." The prisoner was already in the county jail when taken sick and first known to be infected. The board of health had the power to require his isolation, and, if not otherwise pro-

vided for, could provide a suitable place for his treatment. This statute does not make the board of health of the town liable for the care or treatment of every smallpox patient. Such patient, if of means, must take care of himself. If there are others necessarily liable and chargeable with his support and care, they must care for him. In those cases the board's duties are confined to requiring things to be done. It can only furnish a place for treatment for such a sick person if there is no place provided for him. This patient had a place provided for him, and had the credit and resources of the county charged with his support and maintenance during the term of his imprisonment. I can see no reason why the county can shift this burden upon the town of Canton. The president of the board of health, without the authority of the board, recognized the emergency and necessity for action, and, perhaps by reason of the fact that the sheriff was not ready to commit himself or the county, felt constrained to act for the protection of the public. But he or the board had no power to act in this case, except to compel the county to furnish a proper place for the treatment of this prisoner; and, if the county neglected or refused to furnish such place, it is probable the board of health had the right, from necessity, to secure such place, and compel a removal by the sheriff, the charge to the county following. Clearly, the neglect of the sheriff to perform his known duties, and the necessity for the president of the village to perform those duties for him on account of his inactivity, cannot change this burden from the county to the town. There is no real conflict in the affidavits, when viewed with reference to the duties of the different persons acting. Each is to be considered as acting within his authority and performing his duty. Undoubtedly the board of health had the right to approve or disapprove of a place which the sheriff proposed to select. I view the act of the president of the village simply as approving in advance of the selection of this house, it being the duty of the sheriff to select a place such as the board of health permitted, and this house having been occupied by the prisoner and the sheriff's deputy, and such action being known by the purchasing committee, and not objected to, it is a sufficient ratification of the acts. If the prisoner had been charged with murder, or was a known dangerous character, the duty of the sheriff to dictate the place where he should be kept, and to keep him within the control of his officer, and the impropriety of turning him over to the board of health, would be more readily apparent than in this case, where the charge was intoxication. But the fact remains that it was nevertheless the duty of the sheriff to hold the prisoner in his custody and possession until his time was served, and it is evident that the board of health could not require him to relinquish such control and possession. Therefore, without reference to what each particular individual did, the fact remains that the sheriff, through his deputy, occupied this house with his prisoner, with the approval of the chairman of the board of health.

The order to show cause was served upon the board of supervisors at its next session after the rejection of the relator's bill, and the bill was not again presented this year. But the board of supervisors is a continuing body, and it was useless for her to again present the bill after it had been rejected. Her delay is perhaps accounted for from a desire to see if the board would not reconsider its action, and pay the

bills which were presented this session for the suit of clothes that was furnished the prisoner upon his discharge, after his own had been burned, and for the oil stove which was procured for use in the house. After the rejection of those bills, this proceeding was begun. She is not guilty of unnecessary laches, therefore, in making this application to the court.

Where property is taken in such a way, and used for such a purpose, it is fair and just that the owner should receive a full and fair compensation for any and all damages sustained. I hold, therefore, that the county is liable to the relator for such damage, and the supervisors, having failed to consider the bill from a supposed want of authority, are directed at their next session to take up and audit so much of the relator's bill as is fair and just, and that a peremptory mandamus issue accordingly. The board of supervisors need not meet specially for the consideration of this bill. Fifty dollars costs are allowed to the relator.

Ordered accordingly.