SPENCER GREGORY, Respondent, *v.* THE MAYOR, ALDER-MEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellants.

JOHN J. McCLAREN, Respondent, *v.* THE SAME, Appellants.

The mayor, aldermen and commonalty of the city of New York, under the charter of the city, and the statutes amendatory of the same, have power to pass by-laws and ordinances, in advance, to prevent nuisances, as well as to secure their abatement.

The board of health of that city have power to act upon a particular thing dangerous to public health, and cause it to be removed; but they have not the power to assume, in advance, that all the sinks and privies in the city of New York, are or will become nuisances, or dangerous to the public health, and bind the city by a contract for the removal of their contents.

The board of health of the city of New York, on the 11th of June, 1858, passed the following resolution: " *Whereas,* The city inspector has reported, at his office, over 1,000 sinks and privies full, and no provision being made by the common council for the carrying away of their contents, and the nuisance has become intolerable, therefore, *Resolved,* That the city inspector be empowered to employ W. H. Woodruff to remove temporarily, or until further ordered by this board or the common council, all the contents of the sinks and privies of this city, beyond the harbor, without nuisance ; provided the rates of compensation, including all expenses, shall not exceed the sum of fifty dollars per week for boats of fifty tons burthen, and in the same ratio for boats of larger proportion; and that the city inspector be directed to order the work of removing the

night soil to be commenced to-morrow evening." On the next day (12th June, 1858), a contract was signed by Woodruff, reciting the resolution and binding him "to do and perform the work aforesaid," so long as the city inspector should, under the resolution, employ him, and· upon the terms stated in the resolution; and in case he shall be employed to do such work for the space of six months, the price should be forty instead of fifty dollars, as provided in the resolution. The city inspector certified upon this contract, as follows: "This will certify that, so far (and by virtue of authority of the board of health), as the foregoing resolution may empower me so to do, I have employed Mr. W. H. Woodruff to furnish vessels to receive and remove night soil from the city on the terms as above set forth." W. immediately commenced the work of removal and continued engaged upon it until the 18th of May, 1859. In actions brought by his assignees against the city, to recover the compensation stipulated in the contract—*Held*, that the board of health had exceeded its powers, and the defendants were not liable.

(Argued January 16th, 1869, and decided March 22d, 1869.)

THESE actions were brought against the city of New York by the respondents, respectively, as assignees of portions of the compensation claimed to be due one Woodruff, for services performed by him under a contract made by him on the 12th of June, 1858, for the removal of the night soil from the sinks and privies in that city. The contract was signed by Woodruff, and the city inspector certified upon it that he had employed W. to do the work upon the terms mentioned in the contract, "so far (and by virtue of authority of the board of health) as the foregoing resolution may empower me to do so."

The resolution of the board of health referred to, was recited in the contract, and is fully set forth in the opinion of the court.

The plaintiffs recovered in both actions, and from the affirmances of these recoveries by the General Term the city appeals to this court.

The questions presented in the case, with the facts out of which they arise, are fully stated in the opinion of the court.

*Richard O'Gorman*, for the appellants.

*Charles Jones*, for the respondents.

WOODRUFF, J.   These actions are alike founded upon an alleged contract, made by the city inspector of the city of New York, on the 12th June, 1858, with the assignor of the respective plaintiffs, in pursuance of a resolution of the board of health of the said city, by which the city inspector, "so far as such resolution empowered him so to do," employed such assignor " to remove, temporarily, or until further ordered by the board of health, or the common council, all the contents of the sinks and privies of the city, beyond the harbor, without nuisance," for a compensation of fifty dollars per week for boats of fifty tons burthen, and in the same ratio for boats of larger proportion.   The assignor of the plaintiff, under that contract, began the work of removal on the 12th of June, 1858, and continued in such work of removal, until and including the 18th of May, 1859.   These actions are respectively brought to recover part of the compensation, which, by the terms of such alleged employment, would be payable to such assignor for the service, he having assigned to the respective plaintiffs certain of his weekly bills rendered to the city inspector therefor.

The city inspector having, in the very terms of the employment, declared that he gave his sanction thereto, only so far as he was empowered to do so by the resolution of the board of health, the question in each case is this :

Had the board of health power to, and did they, by their resolution, bind the corporation of New York (the defendants) to pay according to the tenor of the employment in question.

By article 1st, of title 3, of chapter 275, of the Laws of 1850, it is provided in section 2, that the mayor, aldermen and commonalty of the city of New York shall have full power and authority to make and pass all such by-laws and ordinances as they shall, from time to time, deem necessary and proper for the preservation of the public health of said city, and also for the abatement and removal of all and every nuisance in said city, and for compelling the proprietors or owners of the lot or lots upon which the same may be, to abate and remove the same.

By the previous title, the legislative powers theretofore vested in the board of health, except so far as by this act continued or modified in them, were vested expressly in the mayor and common council.

Section 3 made it lawful for the mayor, aldermen and commonalty, in all cases, where they may deem it necessary for the more speedy execution of the said by-laws or ordinances, or any of them, to cause any such nuisance or nuisances to be abated or removed *at their own expense*, and authorized the collection of such expense, with interest and costs, by distress or by action, from the owner or owners of the lots from which such nuisance or nuisances shall have been abated or removed. And section 4 made such expense a real incumbrance upon such lots, bearing interest, and recoverable with costs in like manner, as if the premises were mortgaged to the defendants.

Section 5 declares it the duty of the board of health to cause any street or avenue to be fenced up to prevent communication therewith, if they think the public safety requires it; to forbid communication with houses, &c., infected with contagion or pestilential diseases; to adopt such measures to prevent such intercommunication as shall be prompt and effectual; to provide places for those sick of such diseases, and procure them medical attendance and provision; to publish such regulations as they shall have made; to issue warrants for the apprehension and removal of such persons as cannot otherwise be subjected to those regulations. And section 6 then enacts, that the board of health, or the mayor and the commissioners of health, when they shall judge it necessary, may cause any cargo or part of cargo, or any matter, or any thing, within the city, that may be putrid or otherwise dangerous to the public health, to be destroyed or removed. Such removal, when ordered, shall be to the quarantine ground, or such other place as the board of health shall direct. Such removal or destruction shall be at the expense of the owner or owners of the property so removed or destroyed, and the same may be recovered from such owner

or owners in an action at law, by the mayor, aldermen, and commonalty of the city.

The act also confers certain powers, and imposes duties upon the city inspector touching the examination of all buildings, lots and places, to ascertain and report to the mayor and commissioners of health, the condition thereof, so far as the public health may be affected thereby, and authorizes him to give all such directions, and adopt all such measures for cleansing and purifying all such buildings, lots and other places, and to do, or cause to be done everything, which, in the opinion of the mayor and the commissioners of health of the city, shall be deemed necessary. And every person who shall disobey any order of the city inspector, or of the board of health, which shall have been personally served on them to abate or remove any nuisance, is declared liable to arrest and summary punishment by fine or imprisonment, or both.

The charter of the city of New York, as amended in 1857, is also referred to as having some bearing on the question before us, in that it provides in section 27 more full details regarding that department of the city government previously existing, known as the "City Inspector's Department," and declares that the city inspector shall have cognizance of all matters affecting the public health, pursuant to the ordinances of the common council and the lawful requirements of the commissioners of health and of the board of health.

The statutes above referred to are relied upon to sustain the validity of the contract in question, which is found to have originated and been entered into as follows:

On the 11th of June, 1858, the board of health passed a resolution in these terms.

"*Whereas*, The city inspector has reported at his office over 1,000 sinks and privies full and no provision being made by the common council for the carrying away of their contents and the nuisance has become intolerable; therefore,

"*Resolved*, That the city inspector be empowered to employ W. H. Woodruff, to remove temporarily, or until further

ordered by this board or the common council, all the contents of the sinks and privies of this city beyond the harbor, without nuisance, provided the rates of compensation including all expenses, shall not exceed the sum of fifty dollars per week for boats of fifty tons burthen, and in the same ratio for boats of larger proportion; and that the city inspector be directed to order the work of removing the night soil to be commenced to-morrow evening."

Thereupon the contract in question was prepared, reciting the above resolution, binding the contractor "*to do and perform the work aforesaid*," so long as the city inspector shall, under said resolution, employ him, and upon the terms stated in the resolution; and in case he shall be employed to do such work for the space of six months, the price shall be forty instead of fifty dollars, as provided in the said resolution.

The city inspector cautiously certifies to the agreement which the contractor signed: "This will certify that so far, (and by virtue of authority of the board of health), as the foregoing resolution may empower me so to do, I have employed Mr. W. H. Woodruff to furnish vessels to receive and remove night soil from the city, on the terms as above set forth."

Section 38 of the charter of the city of New York, requires that whenever any work is necessary to be done to complete a particular job, * * which work and job is to be undertaken for the corporation and the several parts of the said work shall together involve the expenditure of more than $250, the same shall be done by contract, * * and all contracts shall be entered into by the appropriate heads of departments, and shall after advertisement for proposals, be given to the lowest bidder. And section 28 provides that no expense shall be incurred by any of the departments or officers thereof, whether the object of the expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made covering such expense.

These sections, however, it is insisted on behalf of the respondent (the plaintiff), do not apply to the present case.

That here the work was not ordered to be done by the common council, and therefore that it was not necessary to advertise for proposals and award the contract to the lowest bidder; and that the contract was not entered into by the city inspector, either in obedience to an order of the common council, nor in exercise of any power vested in him as the head of a department, but simply and only in obedience to the mandate of the board of health, and therefore that it was not necessary for the plaintiff to show a previous appropriation covering the expense.

I do not think it necessary, in this case, to affirm or deny these distinctions, nor to inquire whether in any case (if the nature of the work to be done would have required such advertisement and award to the lowest bidder, had it been ordered by the common council), any of the boards or agencies through whom the defendants can be charged with the payment, can make the defendants liable without a compliance with that requirement. As to which see *Brady* v. *The Mayor* (2 Bosw., 184, and 20 N. Y., 312).

I shall consider the question upon the ground upon which the plaintiff insists on the validity and binding force of the contract, viz., that it was made in the due exercise of the powers of the board of health of the city. That they had authority to employ the contractor to perform the work and have done so.

The importance of sustaining that board, in all lawful measures, tending to secure or promote the health of the city, should make us cautious in declaring any curtailment of their authority, except upon clear grounds. On the contrary, powers conferred for so greatly needed and most useful purposes, should receive a liberal construction for the advancement of the ends for which they were bestowed.

A review of the statutes which I have above cited, relating to nuisances in the city of New York, and their abatement and removal, will show a most efficient system, and abundant power to carry into full execution whatever the health and safety of the citizens demand.

*First.* There is provision for laws and ordinances by the defendants for the abatement and removal of all and every nuisance in the city, of whatever kind, and to compel the owners of the lot or lots whereon the same may be, to abate and remove the same. Ordinarily this power is ample and sufficient, and, except in extraordinary emergencies, will be sufficiently speedy.

But, *second*, there may be cases in the judgment of the defendants, admitting of no delay, and then the defendants are clothed with power to cause such abatement or removal instantly, at their own expense, and compel the owners to make reimbursement and giving the defendants a lien in the nature of a mortgage on the lot or lots, for their complete indemnity.

Again, the city inspector is furnished with full power of visitation and inspection, and is bound to report the condition of buildings, lots and places, to the mayor and the commissioners of health, and to give such directions and adopt such measures for cleansing and purifying, as in the opinion of the mayor and commissioners, are deemed necessary; and a disobedience of any order of the city inspector, or of the board of health, is punishable by fine and imprisonment.

Here are cumulative means of abating and removing all nuisances in any and every place in the city. First, by general laws and ordinances, and by special orders, they are designed to act upon owners of the premises, to compel them to abate and remove. Next the defendants and the city inspector may give immediate and instant effect to such ordinances and special orders by causing the work to be done, and collect the expense from such owners.

In addition to this, the board of health, which in its official character is wholly occupied with care for the public safety, has a further power under which the proceedings in the present case are sought to be upheld.

The fifth section of the act above cited has especial reference to the presence of contagious or pestilential disease, and the measures the board may take at once to prevent its extension.

And the sixth section anticipates the possible arrival in this port of cargoes, or parts of cargoes, bringing pestilence or tending to produce it, and the further possibility that laws, ordinances and the action of the defendants and their officers may not be so thoroughly efficient but that some matter, or thing may be within the limits of the city which is putrid or otherwise dangerous to the public health, and in such case, either the board of health, or the mayor and commissioners of health may cause it to be destroyed or removed; but this is to be done at the expense of the owner of the *property* so *removed or destroyed*, and to be recovered by the defendants, from such owner.

And the question hereupon is, does this warrant the board of health in contracting for the removal of nuisances generally, or only of the particular matter or thing which they shall, in the language of the act, "judge it necessary" to cause to be removed because putrid or otherwise dangerous to the public health; or perhaps, more strictly, does it warrant their action generally upon all matters or things of a particular class, without first in some manner finding the fact of their existence, and exercising a specific judgment on the question of their dangerous character, or the necessity for their removal?

There is great plausibility in the argument that, as the law itself requires the removal to be at the expense of the owner of the thing removed, to be recovered by the defendants, from such owner, the board cannot make or authorize such a sweeping order or contract as fails to discriminate in that regard, and leaves the defendants powerless to collect from any one the expenses incurred. The whole system contemplates that the wrong doing or negligent owner shall bear the expense; and yet these proceedings of the board of health, fail to furnish to the defendants the means of showing that any particular sink or privy was adjudged a nuisance, or that any order for the removal of its contents was made; but I rest no conclusion upon this suggestion.

For the purposes of this case, let it be assumed that as to the contents of the 1,000 sinks and upwards, which had been

reported at the office of the city inspector, as recited in their resolution, it was competent for them by virtue of the sixth section of the statute, to cause their removal beyond the city, adjudging them a nuisance; and that the employment of the contractor in manner and form as done in this case would have been binding. This is far short of sustaining the employment of the contractor to remove the contents of all the sinks and privies in the city of New York, until further otherwise ordered.

The mayor, aldermen and commonalty of the city have power to pass by-laws and ordinances in advance, to prevent nuisances, as well as to secure their abatement.

The board of health, in the section in question, have power to act upon a particular matter or thing dangerous to the public health, and cause it to be removed.

They have not power to assume in advance that all the sinks and privies in the city of New York are or will become nuisances, or dangerous to the public health, and contract for the removal of their contents, indefinitely, until they or the common council order otherwise, and bind the defendants to pay therefor.

Subject to the regulations imposed by the by-laws and ordinances of the corporations, owners of houses and lots had the right, nay it was their duty, to remove such contents, so as to prevent a nuisance, and yet by this action of the board of health, if binding on the defendants, the whole expense of removing not only the contents of sinks and privies which had become a nuisance, but of all the sinks and privies in the city was cast upon the defendants.

No latitude of construction would warrant us in saying that the resolution of the board adjudged all the sinks and privies in the city nuisances, nor that they were in a condition dangerous to the public health.

I cannot resist the conclusion that, in this instance, the board of health exceeded its powers, and failed to charge the defendants with liability for their employment of the contractor.

Passing over the other objections urged here and in the court below, I feel compelled upon this ground to say that the judgments must be reversed. It is not material to add in reference to any supposed equity of the respondent, that it is quite apparent from the face of the alleged contract, that the city inspector signed that contract, and the respondent's assignor accepted it under a plain intimation of doubt, whether there was any authority for such an employment. Judgment reversed with costs.

All the judges concurred with WOODRUFF for reversal, except DANIELS, J., who was inclined to a modified affirmance, limiting the recoveries to the compensation for cleaning the 1,000 sinks mentioned in the resolution.

Judgment reversed and new trial ordered.