MARY A. CRAYTON, Respondent, *v.* GEORGE E. LARABEE et al., Appellants.

Public health — quarantine to prevent spread of infectious disease — provisions of Public Health Law (Cons. Laws, ch. 45, § 25) relating thereto modified by Second Class Cities Law (Cons. Laws, ch. 53, §§ 145, 146, 147, 148, 154) — action against health officers of second class city for damages claimed to be sustained by plaintiff because she was quarantined — when such qarantine authorized by city ordinance and health officers protected thereby.

1. Although the Public Health Law (Cons. Laws, ch. 45) by section 25 makes provisions directing local boards of health to guard against infectious and contagious diseases and makes regulations for that purpose, its provisions are modified by the Second Class Cities Law (Cons. Laws, ch. 53, §§ 145, 146, 147, 148, 154) which authorizes the common council of any second class city to adopt ordinances relating to the public health of such city. When the common council of a city has accepted this delegation of power and

has duly and legally adopted an ordinance giving the health officers of such city wider powers than those named in the Public Health Law, the ordinance will prevail and will protect all officers acting in good faith and with reasonable care to enforce the provisions thereof, since valid ordinances have, within the proper territory, the character and effect of a statute and may correctly be said to be in force by the authority of the state.

2. This action was brought by plaintiff against defendants, who were health officers of a city of the second class, to recover damages for having quarantined and imprisoned her at her home which adjoined a house where a person was ill with smallpox. The trial court denied a motion to dismiss the complaint and instructed the jury that unless the person quarantined had been exposed to the infectious disease, the quarantine was not justified and the defendants had no power under the law or under the ordinance to enforce it; that the ordinance relative thereto duly adopted by the city had no broader or different meaning than had the Public Health Law; that good faith and reasonable cause were not material or any justification; that defendants acted wrongfully, and that, therefore, plaintiff was entitled to damages. *Held*, upon examination of the record, that the instructions were erroneous; that the question was clearly raised; that the ordinance under which the defendants acted was authorized, was legally adopted and was a reasonable and valid health regulation under the police power of the state, vesting in the health officer a stated discretionary power, which, if lawfully exercised, protected those exercising it against the consequent damages to persons or property. (Public Health Law, Cons. Laws, ch. 45, § 25; Second Class Cities Law, Cons. Laws, ch. 33, §§ 145, 146, 147, 148, 154.) (*People ex rel. Copcutt* v. *Board of Health of Yonkers*, 140 N. Y. 1; *Matter of Smith*, 146 N. Y. 68, distinguished.)

*Crayton* v. *Larabee*, 162 App. Div. 934, reversed.

(Argued March 15, 1917; decided May 1, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 13, 1914, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*D. Raymond Cobb*, Corporation Counsel (*Frank Harris* of counsel), for appellants. The plaintiff failed to

make a case for the jury and the trial court's refusal to grant nonsuit was error. (*Whidden* v. *Cheever*, 69 N. H. 142.) The trial court erred in submitting the case to the jury solely under the provisions of the Public Health Law, since under the Second Class Cities Law, and the provisions of the ordinance adopted by the city pursuant to authority thereby conferred, the health officer had discretion in establishing a quarantine to prevent the spread of smallpox. (*Matter of Smith*, 146 N. Y. 68; *Smith* v. *Emery*, 11 App. Div. 10; *City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276; *People* v. *N. Y. Edison Co.*, 159 App. Div. 786; *Met. Bd. of Health* v. *Heister*, 37 N. Y. 661; *Polnsky* v. *People*, 73 N. Y. 69; *Bellows* v. *Raynor*, 207 N. Y. 389; *F. A. Coach Co.* v. *City of New York*, 194 N. Y. 29; *City of Rochester* v. *M. F. Milling Co.*, 199 N. Y. 207; *People ex rel. Dunn* v. *Ham*, 166 N. Y. 477.)

*D. Francis Searle* for respondent. There was no exception taken in the case that presents a question of law as to whether there was any error in submitting or not submitting to the jury the question whether the defendants were justified in imprisoning plaintiff because they had probable cause to believe she had smallpox, or was so exposed to it that she would probably communicate it to others if she was not imprisoned fifteen days. (*Crapo* v. *City of Syracuse*, 183 N. Y. 395; *Quinlan* v. *Welch*, 141 N. Y. 165; *Clark* v. *N. Y. C. & H. R. R. Co.*, 191 N. Y. 416; *Ross* v. *Caywood*, 162 N. Y. 259; *Wanger* v. *Gremmer*, 169 N. Y. 421; *Hawley* v. *Olcutt*, 134 App. Div. 629; 198 N. Y. 132; *Gralish* v. *B. & O. R. R. Co.*, 130 App. Div. 238; 197 N. Y. 540.) The verdict was supported by the evidence. (*Matter of McMillan*, 218 N. Y. 64.) No such delegation of legislative power was permissible. (*Basto* v. *Lovett*, 8 N. Y. 483; *People* v. *Kennedy*, 207 N. Y. 558; *Johnstown Cemetery Assn.* v. *Parker*, 28 Misc. Rep. 280.) Unless plaintiff was infected with or exposed

to disease the defendant had no right to imprison or control her. (*Matter of Smith*, 146 N. Y. 68; *Smith* v. *Emery*, 11 App. Div. 10.) That part of the Syracuse sanitary code or health ordinance is invalid which provides: "The health officer shall order isolation or absolute quarantine in such cases, or wherever (if it means whenever) he deems necessary, and take such other quarantine measures as he deems necessary in cases not above provided for." (*Matter of Smith*, 146 N. Y. 68; *Smith* v. *Emery*, 11 App. Div. 10; *Yick Wo* v. *Hopkins*, 118 U. S. 356.)

COLLIN, J. The action is to recover the damages sustained by reason of an alleged unlawful restraint or quarantine of the plaintiff within her home at Syracuse, N. Y. The judgment in favor of the plaintiff, consequent upon a verdict, was affirmed by the non-unanimous decision of the Appellate Division. The appellants present to us exceptions to the refusal of the trial court to grant them a nonsuit at the close of the evidence and to parts of the charge to the jury.

The cardinal facts upon which the appellants rely are, in effect, undisputed. At the times involved the defendant Hessler was the commissioner of public safety of the city of Syracuse; the defendant Maloney, the health inspector in the department of public safety; the defendant Totman, the health officer, and the defendant Larabee, a policeman assigned to assist the health officer. In July, 1911, a woman living in a house adjoining that in which the plaintiff lived was ill with smallpox. The health officer, with the aid of the other defendants, thereupon quarantined, for the period from July 14 to July 29, 1911, the house of plaintiff and within it herself and the other occupants of the house. The claim of the appellants is that the trial court ruled, and erred therein, throughout the trial that the quarantine was wrongful unless the plaintiff had been, in fact, exposed to the dis-

ease, and that the existence of a reasonable ground or cause for the judgment of the health officer, if it existed, that the public health required the quarantine did not relieve him and the defendants fulfilling his orders from liability to the plaintiff. The Appellate Division held and the plaintiff urges that the claim of the appellants was not raised at the trial. We have decided that it was so raised.

The complaint alleges two causes of action. The first cause is constituted of the facts that the defendants wrongfully imprisoned the plaintiff at her home and advertised that she had, or had been exposed to, a loathsome disease, was unfit to be at large or pursue her occupation and thereby deprived her of her earnings, injured her feelings, held her up to ridicule and caused her to be shunned by her fellow-citizens. The second cause of action is constituted of the same facts, and the further facts that the defendants did the acts stated without any probable or reasonable cause, and "said plaintiff never had said disease and never had been exposed to said disease and there was no reasonable or probable grounds for the defendants' action in the premises." The answer contains a general denial. Obviously the issue of the good faith and the existence of reasonable grounds for the judgment of the appellants was raised by the pleadings. A statute pertinent to the issue provided: "Every such local board of health shall guard against the introduction of such infectious and contagious or communicable diseases as are designated by the state department of health, by the exercise of proper and vigilant medical inspection and control of all persons and things infected with or exposed to such diseases, and provide suitable places for the treatment and care of sick persons who cannot otherwise be provided for. It shall prohibit and prevent all intercourse and communication with or use of infected premises, places and things, and require, and if necessary, provide the means for the thorough purification and cleansing of the same before general intercourse with

32

the same or use thereof shall be allowed. * * * " (Public Health Law [Cons. Laws, ch. 45], section 25.) At the trial the plaintiff's counsel, evidently adopting the statute as the sole authority for, and the test of the lawfulness of, the acts of the defendants, presented evidence of the quarantine by the defendants and the resulting damages to plaintiff, and that the plaintiff had not been "infected with or exposed to" the disease. The defendants presented evidence of their official capacities and the provisions of the ordinances of the city of Syracuse declaring smallpox an infectious or contagious disease and the general official powers and duties of the defendants, as follows: "Isolation — All communication with any house or family infected with scarlet fever, smallpox or diphtheria and such other diseases as may be declared at any time by the commissioner dangerous or a menace to public health, is hereby forbidden except to physicians, nurses or messengers, to carry necessary advice, medicine and provisions and to such other persons as may be necessary to render aid within said house, for the support or assistance of said family. The health officer shall order isolation or absolute quarantine in such cases or wherever he deems necessary, and take such other quarantine measures as he deems necessary in cases not above provided for; " of the conditions which tended to prove that the plaintiff had been, and they had reasonable and adequate cause to deem she had been exposed to the disease and in such manner that the quarantine of her within her house, as established, was necessary for the health and safety of the public. At the close of the evidence the defendants moved for a nonsuit and dismissal of the complaint upon several grounds. The fourth ground is alone relevant to the phase under consideration, and is: "*Fourth,* that the provisions of the Public Health Law of the State are not solely applicable here, because the Legislature by special enactment as to second class cities has modified the Public Health Law and given the common council

power to adopt ordinances in relation to the public health of any second class city; that the common council of the city of Syracuse has accepted the delegation of power and has acted, and has clothed the Health Officer with wide powers, using in the ordinance the following language: 'The Health Officer shall order isolation or absolute quarantine in such cases or wherever he deems necessary,' and take such other measures as he deems necessary in cases not otherwise provided for. Further, that the evidence shows in this case that the Health Officer acted in the premises entirely in accordance with the discretion and authority with which he was clothed." The motion was denied with an exception to the defendants. The court charged: "* * * We have to construe reasonably the statutes and the ordinances conferring those powers upon the board of health. Therefore when the ordinance of the city of Syracuse says that the Health Officer may whenever he deems it necessary quarantine a person or persons, we must hold that language to mean this: that he may quarantine such person or persons whenever he ought reasonably to deem it necessary; whenever there is reasonable cause for such quarantine; whenever the necessity is a reasonable necessity. And that means this: that the board of health or the health officer may quarantine a person suffering from an infectious disease or a person who has been exposed to an infectious disease in such way that he or she is liable to take it herself or to convey it to others. Now that is the power which the Health Officer and the board of health of this city have under the statute and under the ordinances of the city. He and they may quarantine a person suffering from an infectious disease or a person who has been exposed to such an infectious disease in such a manner that he or she is liable to take it himself or herself, or is liable to convey the disease to others. And that is the limit and extent of the powers which the board of health

# 500 CRAYTON v. LARABEE.

and the Health Officer have in regard to infectious diseases and the quarantining of persons for such diseases;" and charged finally that unless there had been an exposure in the manner stated the quarantine "was not justified, and the board of health and the health officer were doing what they had no power under the law or under the ordinance or in any way, to do; they were acting wrongfully and for that wrong Mrs. Crayton is entitled to such damages as were occasioned to her by it." An exception of the defendants' counsel was: "May it please your Honor, in order that I may preserve the position which I took in my motion for a non-suit, I desire to except to what your Honor said in reference to the ordinance and its effect; my idea being that the provisions of the second class cities charter mentioned in my motion for a non-suit delegated the power to the city which the city accepted, and consequently gave the Health Officer wider latitude. I don't wish to waive any objections I raised there."

The trial justice was thoroughly informed as to the ordinance. He repeated in his charge the language which the defendants invoked, and instructed the jury as to its meaning. He was informed that the defendants asserted freedom from liability, by virtue of the ordinance, in case they, in fact, with reasonable cause deemed it necessary to maintain the quarantine. The ordinances, the direct and positive testimony of the health officer and the deputy health officer that they deemed it necessary under the information and knowledge had by them and after a careful consideration to maintain the quarantine for the protection of the public health, and the motion and ground for the nonsuit so told him clearly and unmistakably. He as clearly and unmistakably rejected the assertion of the defendants and charged that the ordinance had not a broader or different meaning or effect than had the statute and, in effect, that good faith and reasonable cause to adjudge and act on the part of the defendants

were not material or any justification.  The exception
as clearly and unmistakably pointed out to him that the
defendants regarded and maintained his instruction to
the jury as to the meaning and effect of the ordinance to
be erroneous.

We are thus brought to consider whether or not the
charge, in the regard in question, was erroneous.  The
legality of the procedure or manner of adoption of the
ordinance was at the trial and has been throughout
unquestioned.   The authority to enact it is found, Syra-
cuse being a city of the second class, in the Second Class
Cities Law (Consol. Laws, chap. 53, sections 145, 146, 147,
148, 154).  The trial justice held, and we will assume for
the instant question that it does not infract any right
protected by the Constitution or fundamental principles of
municipal law, and, therefore, is valid.  Valid ordinances
have, within the proper territory, the character and effect
of a statute and may correctly be said to be in force by the
authority of the state.  (*Village of Carthage* v. *Fred-
erick*, 122 N. Y. 268; *New Orleans Water Works Co.* v.
*New Orleans*, 164 U. S. 471; *Heland* v. *City of Lowell*,
3 Allen, 407.)  Our duty is to presume that each clause
and sentence of the ordinance here has a purpose and use
and the purpose and use signified by the usual and ordi-
nary meaning of the language.  (*Matter of New York
& Brooklyn Bridge*, 72 N. Y. 527.)  Among all the
objects to be secured by governmental laws none is more
important than the preservation of the public health.  As
a potent aid to its achievement the state creates or author-
izes the creation of local boards of health or health offi-
cers.   The character or nature of such boards is adminis-
trative.  In determining whether or not powers derogatory
of common-law rights are conferred upon them by statu-
tory enactment, the rule of strict construction must be
applied and the bestowal must clearly appear.  The
powers in fact conferred upon them by the legislature or
by virtue of legislative authority, in view of the great

public interest intrusted to them, have always received from the courts a liberal construction. (*Gregory* v. *Mayor, etc., of New York,* 40 N. Y. 273, 279; *Blue* v. *Beach,* 155 Ind. 121.) In the *Gregory* case we said: "The importance of sustaining that board (of health), in all lawful measures, tending to secure or promote the health of the city, should make us cautious in declaring any curtailment of their authority, except upon clear grounds. On the contrary, powers conferred for so greatly needed and most useful purposes, should receive a liberal construction for the advancement of the ends for which they were bestowed."

The language of the ordinance is common and intelligible. It has a meaning commonly adopted and acted upon. The first sentence forbids communication "with any house or family infected with scarlet fever, smallpox or diphtheria and such other diseases as may be declared at any time by the commissioner dangerous or a menace to public health." The first clause of the second sentence directs the health officer to order isolation or absolute quarantine "in such cases," that is, with or of any house or family infected with any of such designated diseases, or, the infection existing, of any house or person deemed by him to be the necessary subject of such action. The second clause of the second sentence directs him "in cases not above provided for," that is, in any case of a house or family infected with a disease other than either of the designated diseases, to take such other quarantine measures as he deems necessary. Clearly, it directs the health officer whenever and in case a house or family becomes infected with one of the designated diseases to quarantine the house or family, and any other house, person or thing, uninfected with or exposed or unexposed to the disease, adjudged by him to be a probable conveyor of the disease; and in case a house or family becomes infected with a disease other than those designated, to take such other quarantine measures as he deems neces-

sary.  It is not a mere repetition in differing words or the mere equivalent of the statute.  It is a clear, independent authorization.  Neither its language nor the intention of the common council expressed by the language, nor the manifest purpose of its enactment, permit us to approve the interpretation of it as charged by the trial justice.

The general authority to the health officer to absolutely quarantine in cases of the designated diseases "wherever he deems necessary" was not intended to and does not confer upon him unlimited power and right to control persons and property at his discretion.  His action in such regard cannot be arbitrary, unreasonable or oppressive.  The language was wisely chosen and has a far different meaning.  As a preliminary to his action the health officer must *deem* the action *necessary.*  He must adjudge his conclusion, that is, his conclusion must rest upon his knowlege of the facts and of the correct rules for their interpretation and application acquired through a reasonable and fair investigation and consideration at such sources as a person of ordinary intelligence and perception, charged with the responsibilities of the office, would regard as authentic and trustworthy.  The conclusion thus reached must be that the action he orders is essential to public health.  Conditions must exist which render, within reason and fair apprehension, his action essential for the preservation of the health of the public.  For a mere error of judgment the officer cannot be held liable.  Unreasonable and arbitrary action or malicious or partial action, or action in excess of his authority, causing injuries, supports his liability.

Our present conclusion is not in disagreement with our decisions in prior cases.  (*People ex rel. Copcutt* v. *Board of Health, Yonkers,* 140 N. Y. 1; *Matter of Smith,* 146 N. Y. 68.)  In these cases a statute required the existence of a defined and prescribed condition precedent to the action of the health officers threatened or complained of, which condition in fact did not exist.  It may be that the

decisions in these cases were based upon principles of law not applicable here — an hypothesis we do not consider. The police power defies precise definition and rigid delimitation. We hold here that the ordinance was authorized, was legally adopted, was a reasonable and valid health regulation under the police power of the state, vesting in the health officer a stated discretionary power, which, if lawfully exercised, protected those exercising it against the consequent damages to persons or property.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., not sitting.

Judgment reversed, etc.