(No. 14123.—Relatrix remanded.)

THE PEOPLE *ex rel.* Jennie Barmore, Relatrix, *vs.* JOHN DILL ROBERTSON *et al.* Respondents.

*Opinion filed February 22, 1922—Rehearing denied April 13, 1922.*

1. CONSTITUTIONAL LAW—*preservation of public health is part of the police power of the State.* The preservation of the public health by the State finds ample support in its police power, which is inherent and cannot be surrendered, and the constitutional guaranties that no person shall be deprived of life, liberty or property without due process of law, and that no State shall deny to any person the equal protection of the laws, are not intended to limit the subjects upon which the police power may be lawfully asserted in the preservation of the public health.

2. SAME—*the exercise of police power to preserve public health rests with the legislature.* The exercise of the police power in the preservation of the public health is a matter resting in the discretion of the legislature or the board to which the power is delegated, and the courts have nothing to do with the wisdom or expediency of the measures adopted and will not interfere except where the regulations are arbitrary, oppressive and unreasonable.

3. SAME—*exercise of police power by designated boards is not a delegation of legislative power.* The legislature may, by general law passed in the exercise of the police power of the State, create ministerial boards with power to prescribe rules and impose penalties for their violation and provide for the collection of such penalties; and the exercise of this power is not a delegation of legislative authority, although the rules of such boards have the force and effect of law.

4. SAME—*State department of health may designate contagious diseases.* Under a general statute giving to the State department of health power to restrict and suppress contagious and infectious diseases, that department has authority to designate such diseases as are contagious and infectious, and such a law is not void on the ground that it delegates legislative power.

5. QUARANTINE—*department of health may isolate persons affected with contagious diseases.* The State department of health, as an administrative body, has authority to make adequate rules, which have the force of law, for the preservation of public health, and to put these rules into effect promptly by isolating persons who are throwing off disease germs and are thereby endangering the public health.

6. SAME—*when courts will interfere with regulations to suppress contagious diseases.* While courts will not pass upon the wisdom of the means adopted to restrict and suppress the spread of contagious and infectious diseases, they will interfere if the regulations are arbitrary and unreasonable.

7. SAME—*city cannot authorize a single health commissioner to exercise powers of a board of health.* The legislature, in giving municipalities power to appoint boards of health, did not authorize a city council to delegate to a health officer the powers and duties which the legislature intended to be exercised by a board, and a health commissioner is purely a ministerial officer, who has no power to determine when a contagious disease exists or to establish a quarantine, but his authority is limited to carrying into execution proper orders of a legally constituted board of health.

8. SAME—*quarantine cannot be established until actual emergency exists.* A person cannot be quarantined upon mere suspicion that he may have a contagious and infectious disease but the health authorities must have reliable information on which they have reasonable ground to believe that the public health is in danger, as they cannot interfere with the liberties of a citizen until the emergency actually exists and the regulation becomes necessary.

9. SAME—*when a person may be quarantined.* As quarantine is not a cure but is a preventive the person quarantined need not be actually sick, and it is not necessary for the health authorities to wait until he has actually caused others to become sick by contact with him before placing him under quarantine.

10. SAME—*what is meant by quarantine.* Quarantine is the method used to confine a contagious disease within the person in whom it is detected or to prevent a healthy person from contracting the infection, and its effectiveness depends not so much upon the isolation of the affected person as upon preventing the communication of the disease germs from the sick to the well, and the regulations must vary according to the subject.

11. SAME—*a person who discharges germs of typhoid may be quarantined.* The State Board of Health, or a board of health organized pursuant to the authority given a city council by the legislature, has authority to establish reasonable quarantine regulations with respect to a person who discharges germs of typhoid fever, whether or not the person is actually sick or has ever suffered from the disease, provided a proper examination discloses that such person is a carrier of typhoid bacilli.

12. HABEAS CORPUS—*when a person, though improperly placed under quarantine, is not entitled to be released.* Although a person is found to be a carrier of a contagious disease and is placed under quarantine by a commissioner of health who has no authority

to exercise the powers of a board of health, yet if the State department of health, to whom the case is reported, authorizes the modified quarantine requested, the person under quarantine is not entitled to be released for such irregularity but must obey the order of the State department.

· DUNCAN, J., dissenting.

ORIGINAL petition for *habeas corpus.*

DARROW, SISSMAN, POPHAM & CARLIN, for relatrix.

SAMUEL A. ETTELSON, Corporation Counsel, (BERTHOLD A. CRONSON, CARL F. LUND, and JOHN A. BUGEE, of counsel,) for respondents.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Jennie Barmore filed in this court at the June term, 1921, an application for a writ of *habeas corpus,* stating that she was unlawfully restrained of her liberty at her home in the city of Chicago by John Dill Robertson, commissioner of health, and Herman N. Bundesen, an epidemiologist of the department of health of the city of Chicago. The writ was awarded and respondents made due return, by which they admit that they are restraining relatrix from going about the city of Chicago and from following her usual occupation of boardinghouse-keeper for the reason that she is a carrier of typhoid bacilli; that they are restraining her by virtue of the authority given them by the statutes of the State and the ordinances of the city and the rules and regulations of the State department of health, and that her detention was necessary for the preservation of the health of the citizens of the city and the State.

The facts are stipulated by the parties to be substantially as follows: Relatrix is a citizen of Chicago and is the owner of the house in which she resides. She kept roomers and boarders. Information came to the department of health, by letters and otherwise, that several persons who

had previously roomed and boarded at the house of relatrix had been ill with typhoid fever. Pursuant to this information the department placed relatrix and her house under quarantine and caused a large placard to be placed in a conspicuous place upon the house. This placard warned all persons that a typhoid carrier resided in the house and contained the ordinary warnings and instructions found on such placards. Relatrix submitted to the department of health bowel. discharges, and an examination of them revealed the presence of large numbers of typhoid bacilli. Several bacteriologists and other medical experts testified that a typhoid carrier is one who has suffered from typhoid fever and although having apparently recovered still carries the typhoid bacilli, or one who has never suffered from the disease of typhoid fever but who continually or intermittently discharges the typhoid bacilli; that the means of freeing such a person of this disability is not known to medical science, and that a typhoid carrier may discharge typhoid bacilli for a number of years and then for a period of years the body discharges may be free from the bacilli, after which the disability may recur. The uncontradicted evidence of the experts is that typhoid bacilli are present in the bowel and bladder discharges of relatrix, and that typhoid fever may be communicated to healthy persons if these bacilli enter their bodies. Relatrix testified that she had never been sick with typhoid fever and that no member of her family and no boarder or roomer in her household had ever been sick with typhoid fever while they lived with her, and that so far as she knew no one had contracted the disease by contact with. her. There was no evidence introduced by respondents to contradict her testimony. The quarantine regulations prescribed by the respondents require relatrix to remain in her home and forbid her to prepare food for anyone but her husband, and forbid anyone to come into her home, as roomers or otherwise, unless they have been immunized from typhoid fever.

Hemenway on Public Health (sec. 30) says of human disease carriers: "It is found that many healthy individuals are a constant source of danger to the community by reason of the fact that they are producing and throwing off disease germs. This is especially true of typhoid fever. After an attack of the fever, perhaps so mild that it was not at the time recognized, many persons continue to develop and discharge the bacilli of the fever, and they are thus causing frequent infections, especially because, owing to their apparent good health, neither the carrier nor his friends are on their guard against the ever-present danger. The legal rights of such individuals, and of the community as against them, may be a matter of some considerable question and perplexity. This must be recognized, however: that a typhoid fever patient is not properly quarantined so long as his infectious discharges are permitted to escape complete sterilization, and a typhoid carrier is entitled to no consideration if he so conducts himself that others receive infection from him. In other words, it is as necessary for the discharges of a carrier to be sterilized as it is for those of a patient." This quotation shows at once the insidious danger of the disease with which we are dealing in this cause and the difficult and perplexing problems its regulation presents.

The health of the people is unquestionably an economic asset and social blessing, and the science of public health is therefore of great importance. Public health measures have long been recognized and used, but the science of public health is of recent origin, and with the advance of the science, methods have been greatly altered. The results to be obtained by scientific health regulations are well illustrated by the remarkable changes made in health conditions in Cuba and Panama. With the increase of population the problem of conserving the health of the people has grown, and public health officers and boards have been appointed

for the purpose of devising and enforcing sanitary measures. That the preservation of the public health is one of the duties devolving upon the State as a sovereign power will not be questioned.  Among all the objects sought to be secured by governmental laws none is more important than the preservation of public health.  The duty to preserve the public health finds ample support in the police power, which is inherent in the State and which the State cannot surrender.  Every State has acknowledged power to pass and enforce quarantine, health and inspection laws to prevent the introduction of disease, pestilence and unwholesome food, and such laws must be submitted to by individuals for the good of the public.  The constitutional guaranties that no person shall be deprived of life, liberty or property without due process of law, and that no State shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of a State may lawfully be asserted in this any more than in any other connection.  (12 R. C. L. 1271; *Booth* v. *People,* 186 Ill. 43; *State* v. *Robb,* 100 Me. 189, 60 Atl. 874; *Kirk* v. *Wyman,* 83 S. C. 372, 65 S. E. 387; *Ayers* v. *State,* 178 Ind. 453, 99 N. E. 730.)  Generally speaking, what laws or regulations are necessary to protect public health and secure public comfort is a legislative question, and appropriate measures intended and calculated to accomplish these ends are not subject to judicial review. The exercise of the police power is a matter resting in the discretion of the legislature or the board or tribunal to which the power is delegated, and the courts will not interfere with the exercise of this power except where the regulations adopted for the protection of the public health are arbitrary, oppressive and unreasonable.  The court has nothing to do with the wisdom or expediency of the measures adopted. *People* v. *Weiner,* 271 Ill. 74; *State* v. *Morse,* 84 Vt. 387, 80 Atl. 189; *State* v. *Superior Court,* (Wash.) 174 Pac. 973.

The legislature may, in the exercise of the police power of the State, create ministerial boards with power to prescribe rules and impose penalties for their violation and provide for the collection of such penalties, and the exercise of this power by the legislature is not a delegation of legislative power. The legislature has the authority to exercise its police powers by general law and to confer upon boards and other agencies authority and discretion to execute these laws. (*People* v. *Tait,* 261 Ill. 197; *Klafter* v. *Examiners of Architects,* 259 id. 15; *City of Chicago* v. *Kluever,* 257 id. 317.) In order to secure and promote the public health the State has created a department of public health as an instrumentality or agency for that purpose, and has invested it with the power to adopt by-laws, rules and regulations necessary to secure the objects of its organization. Similar departments, usually administered by a board of health, have been established in every State in the Union. While it is true that the character or nature of such departments or boards is administrative, only, still the powers conferred upon them by the legislature, in view of the great public interest confided to them, have always received from the courts a liberal construction, and the right of the legislature to confer upon them the power to make reasonable rules, by-laws and regulations has long been recognized by the authorities. When these departments or boards duly adopt rules or by-laws by virtue of legislative authority, such rules and by-laws have the force and effect of law and are often said to be in force by authority of the State. *Blue* v. *Beach,* 155 Ind. 121, 56 N. E. 89.

Section 55 of the Civil Administrative Code confers upon the department of public health all the rights, powers and duties vested by law in the State Board of Health and its officers. Section 2 of the act creating the State Board of Health gives the department of public health general supervision of the interests of the health and lives of the people of the State and gives it supreme authority in

matters of quarantine.   It is also given authority to make
such rules and regulations as it shall from time to time deem
necessary for the preservation and improvement of the pub-
lic health and makes it the duty of all local health and po-
lice officers to enforce these rules and regulations.   The act
provides a penalty by a fine not to exceed $200, or impris-
onment in the county jail not to exceed six months, or both,
for a violation of any rule or regulation duly adopted by
said department.   Pursuant to this authority the depart-
ment of public health has promulgated rules and regula-
tions pertaining to the quarantine of typhoid fever patients
and typhoid carriers.   These rules and regulations provide
that every physician or other person having knowledge of
a known or suspected case of typhoid fever shall immedi-
ately report the same to the local health authorities, and
shall give such information, including probable source of
infection, as shall be available.   The local health authorities
are in turn required to report the case immediately to the
State department of public health, and the house where the
patient or carrier resides shall be immediately placarded in ·
accordance with the regulations, and instructions shall be
given the inmates of the house.   Rule 5, which relates to
the quarantine, provides:   "The patient shall be confined
to one well-ventilated room screened against flies and other
insects and as remote as possible from other occupied rooms.
The room should be stripped of draperies, carpets, uphol-
stery and all furniture and articles not necessary for the
comfort of the occupants.   Visitors shall not be permitted
to enter the sickroom or to come in contact with the at-
tendants.   Quarantine shall be raised only by the local health
authorities or by the State department of public health."
The quarantine regulations further provide that other in-
mates of the infected premises may go about their usual
business with certain regulations and restrictions.   It is fur-
ther provided:   "The local health authorities or the State
department of public health may require the submission of

specimens of blood or other material from cases of typhoid fever or suspected carriers for the purpose of examination by a State or municipal laboratory." Rule 9 specifically governs typhoid carriers, and provides: "Any person known to be or suspected of being a typhoid carrier, and therefore capable of spreading typhoid infection, shall be treated as a typhoid patient even though to all outward appearances such person may appear to be well, and he shall be subject to the rules governing typhoid fever cases: *Provided, however,* that in order to meet conditions peculiar to individual cases the State department of public health, upon its own initiative or upon recommendation of the local health authorities, may modify or relax these rules."

By the Cities and Villages act the city council in cities is given power "to regulate the police of the city or village and pass and enforce all necessary police ordinances." * * * "To appoint a board of health, and prescribe its powers and duties." * * * "To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease," * * * and "to pass all ordinances, rules, and make all regulations, proper or necessary, to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council * * * shall deem proper: *Provided,* no fine or penalty shall exceed $200 and no imprisonment shall exceed six months for one offense." Pursuant to these powers the city of Chicago has established by ordinance an executive department of the municipal government of the city known as the department of health, which embraces the commissioner of health, the city physician, and other assistants and employees. The commissioner of health, who is required to be a physician, is made the head of the department of health and is given the management and control of all matters and things pertaining thereto. He is appointed by the mayor, by and with the advice and consent of the city council. The commissioner is given general supervision over the sanitary

condition of the city, and is given authority to appoint and to remove his assistants and all other officers, inspectors and employees in the department of health. It is made the duty of the commissioner to enforce all laws of the State and ordinances of the city and all rules and regulations pertaining to the public health, and he is given power to make such rules and regulations in relation to the sanitary condition of the city and for the prevention and suppression of disease as he may deem necessary or advisable, but such rules and regulations are not to be in force until approved by the city council, except in cases of emergency. The commissioner and his assistants and employees are given full police powers, and are given authority to enter any building in the city for purposes of inspection, and to quarantine and examine and remove to isolated hospitals afflicted persons, and to arrest any person who violates any of the provisions of the ordinances and any of the rules and regulations of the department. The penalty for such violation is a fine of not less than $10 and not more than $200 for each offense. The city of Chicago has no board of health.

Under a general statute giving to the State department of health power to restrict and suppress contagious and infectious diseases, such department has authority to designate such diseases as are contagious and infectious, and the law is not void for this reason on the ground that it delegates legislative power. (*Ex parte McGee*, 105 Kan. 574, 185 Pac. 14, 8 A. L. R. 831.) The necessity of delegating to an administrative body the power to determine what is a contagious and infectious disease and giving the body authority to take necessary steps to restrict and suppress such disease is apparent to everyone who has followed recent events. Legislatures cannot anticipate all the contagious and infectious diseases that may break out in a community, and to limit the activities of the health authorities to those diseases named by the legislature in the act creating the administrative body would oftentimes endanger the

health and the lives of the people. There is probably not a legislature in the country that would have named the deadly Spanish influenza as a contagious and infectious disease prior to the epidemic of that disease that took a greater toll of lives throughout the country than any other epidemic known in this country. In emergencies of this character it is indispensable to the preservation of public health that some administrative body should be clothed with authority to make adequate rules which have the force of law and to put these rules and regulations into effect promptly. Under these general powers the State department of health has authority to isolate persons who are throwing off disease germs and are thereby endangering the public health. (*Kirk* v. *Wyman, supra; State* v. *Superior Court, supra; State* v. *Rackowski,* 86 Conn. 677, 86 Atl. 606; *Crayton* v. *Larabee,* 220 N. Y. 493, 116 N. E. 355; *Ex parte Brown,* (Neb.) 172 N. W. 522; *Ex parte Johnston,* (Cal.) 180 Pac. 644.) While the powers given to the health authorities are broad and far-reaching they are not without their limitations. As we have said, while the courts will not pass upon the wisdom of the means adopted to restrict and suppress the spread of contagious and infectious diseases, they will interfere if the regulations are arbitrary and unreasonable. (*People* v. *Weiner, supra; Bailey* v. *People,* 190 Ill. 28; *In re Smith,* 146 N. Y. 68, 40 N. E. 497; *Ex parte Dillon,* (Cal.) 186 Pac. 170; *Ragg* v. *Griffin,* (Iowa) 170 N. W. 400, 2 A. L. R. 1327.) A person cannot be quarantined upon mere suspicion that he may have a contagious and infectious disease, (*Ex parte Shepard,* (Cal.) 195 Pac. 1077,) but the health authorities must have reliable information on which they have reasonable ground to believe that the public health will be endangered by permitting the person to be at large. Where danger of an epidemic actually exists, health and quarantine regulations will always be sustained by the courts, (*People* v. *Board of Education,* 234 Ill. 422; *Hagler* v. *Larner,* 284

id. 547; *Globe School District* v. *Board of Health,* (Ariz.) 179 Pac. 55;) but the health regulations are all sustained on the law of necessity, and when the necessity ceases the right to enforce the regulations ceases. Health authorities cannot promulgate and enforce rules which merely have a tendency to prevent the spread of contagious and infectious diseases, which are not founded upon an existing condition or upon a well-founded belief that a condition is threatened which will endanger the public health. The health authorities cannot interfere with the liberties of a citizen until the emergency actually exists. (*Potts* v. *Breen,* 167 Ill. 67; *In re Smith, supra; Rhea* v. *Board of Education,* (N. D.) 171 N. W. 103.) Where one has been arrested and placed under quarantine on the ground that he is afflicted with a contagious disease he has the right to have the legality of his detention inquired into by *habeas corpus. Ex parte Hardcastle,* (Tex.) 208 S. W. 531, 2 A. L. R. 1539.

It is not necessary that one be actually sick, as that term is usually applied, in order that the health authorities have the right to restrain his liberties by quarantine regulations. Quarantine is not a cure—it is a preventive. As the term is used in this opinion, quarantine is the method used to confine the disease within the person in whom it is detected or to prevent a healthy person from contracting the infection. Disease germs do not usually travel through the air unaided, but they are carried by insects, by dumb animals and by human beings. Effective quarantine must therefore be not so much the isolation of the person who is sick or affected with the disease as a prevention of the communication of the disease germs from the sick to the well. Thus, in the case of typhoid fever, effective quarantine must include very strict restrictions upon the movements of the attendants who in any way come in contact with the sick person or his discharges. It must include the destruction of the bacilli in the discharges of the bowels and the bladder and in the cloths used to wipe the mouth of the patient.

Quarantine, in the very nature of the regulation, is not a definite or uniform measure but it must vary according to the subject. One of the important elements in the administration of health and quarantine regulations is a full measure of common sense. It is not necessary for the health authorities to wait until the person affected with a contagious disease has actually caused others to become sick by contact with him before he is placed under quarantine. (*People* v. *Tait, supra; Kirk* v. *Wyman, supra.*) In the latter case a woman was affected with anæsthetic leprosy, contracted while she was engaged in missionary work in Brazil. It appeared that leprosy in this form was only slightly contagious, and that she had lived for many years in the city of Aiken, South Carolina, and had mingled freely with the people, and so far as could be ascertained she had not imparted the disease to any other person. The court held, however, that when the distressing nature of the malady was regarded, the board of health was well within the limits of its powers when it required the victim of it to be isolated. The disease was incurable, and the isolation would necessarily continue throughout the remainder of the patient's life.

In the case at bar the State Board of Health, or a board of health in the city of Chicago duly organized pursuant to the authority given the city council by the legislature, undoubtedly has the right to establish reasonable quarantine regulations with respect to relatrix so long as she is discharging the germs of a contagious and infectious disease. Whether the authority exists to compel a person apparently well to submit to an examination to determine whether he is a germ-carrier is not before us, for the reason that relatrix submitted to the examination which revealed that she is such a carrier. The only question presented for determination is whether she is legally and properly detained under quarantine in her home. In order to determine this question we must determine whether an authority authorized

by the legislature of this State to determine when a person is afflicted with a contagious or infectious disease and to quarantine against the spread of such disease has acted in establishing the quarantine over the home and person of relatrix. The legislature has granted to cities the power to appoint a board of health and to prescribe its duties and powers. A board of health must necessarily consist of more than one person, and it generally consists of several persons. Many authorities contend that the administration of public health should be vested in an individual, and that that individual should be a person trained in the science of public health. This contention is based on the ground that this form of administration of the health laws is productive of efficiency and economy. The same argument might be made in favor of an absolute monarchy, but the experience of the world has been that other forms of government, perhaps more cumbersome and less efficient, insure to the people a more reasonable and less arbitrary administration of the laws. Whatever may be best, the legislature of Illinois has said that the public health of cities shall be regulated and guarded by a board of health, and until the legislature grants to cities the power to supervise the sanitary and health conditions of the city by another instrumentality the cities must content themselves with the power that has been given to them. The city council had no authority to delegate to a health officer the powers and duties which the legislature said it might delegate to a board of health. The powers given to boards of health are extraordinary, and the legislature was evidently unwilling to leave to one person the determination of such important and drastic measures as are given to such boards. In the judgment and fidelity of a greater number acting together is the greatest security against the abuse of extraordinary power. In *Taylor* v. *Adair County,* 119 Ky. 374, 84 S. W. 299, it was held that a county board of health did not have power to delegate its duties to a health officer. In *Commonwealth* v. *Yost,* 197

Pa. 171, 46 Atl. 845, it was held that a board of health had no authority to delegate to its secretary power to act in a matter requiring the action of the board. In *Young* v. *County of Blackhawk,* 66 Iowa, 460, 23 N. W. 923, it was held that a board of health could not delegate its powers to a committee appointed by the board. The health commissioner of Chicago is purely a ministerial officer and has no legislative powers whatever. The statute gives to no such individual authority to make rules and regulations which shall have the effect of law. The city has no right to give him authority to determine when a contagious and infectious disease exists and to establish a quarantine. His authority is limited to carrying into execution proper orders of a legally constituted board of health. (*People* v. *Board of Education, supra.*) The department of health of Chicago reported the case of relatrix to the State department of health and requested that department to authorize a modified quarantine. This authority was granted. While the original quarantine was established without authority of a legally constituted board of health, the State department of health has, by authorizing the modified quarantine, in effect established such quarantine on the report of the department of health of the city of Chicago, and respondents are therefore restraining relatrix as agents of the State department. She is bound to respect the rules and regulations promulgated by the State department of health respecting the modified quarantine under which she is placed, and for a violation of these rules she is subject to the penalties provided by the statutes. In order that she may know what the rules and regulations are, it is necessary that she be furnished a copy of them. Relatrix is therefore remanded to the custody of respondents as agents of the State department of health.     *Relatrix remanded.*

Mr. JUSTICE DUNCAN, dissenting.